MYERS INVESTIGATIVE AND
SECURITY SERVICES, INC.,
Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 01–5014.

United States Court of Appeals,
Federal Circuit.

Jan. 8, 2002.

Lawrence J. Sklute, Sklute & Associates, of Washington, DC, argued for plaintiff-appellant. With him on the brief was Nolan Sklute.

Tonia Tornatore, Attorney, Commercial Litigation Branch, Civil Division, Depart-

ment of Justice, of Washington, DC, argued for defendant-appellee. On the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; Donald E. Kinner, Assistant Director; and Sean C. Griffin, Trial Attorney.

Before CLEVENGER, GAJARSA, and DYK, Circuit Judges.

## DECISION

DYK, Circuit Judge.

The question presented in this case is whether Myers Investigative and Security Systems, Inc. ("Myers") has standing to challenge the award of sole source contracts by the United States to a contractor other than Myers. We hold that Myers lacks standing because it failed to show it had a substantial chance of securing the awards. Therefore, we do not decide the question of mootness urged by the United States. Accordingly, we affirm.

## BACKGROUND

The General Services Administration ("GSA") is responsible for providing guard services for federal civilian facilities. Guard services may be obtained through contracts with private security firms. In 1999, the GSA began the process of procuring contracts for guard services in southern and northern Ohio. The GSA identified 10 to 15 firms that might be able to perform the services. Unlimited Security, Inc. ("Unlimited") and Diamond Group, Inc. ("Diamond") expressed a timely interest in performing the northern Ohio contract and southern Ohio contract, respectively, and the GSA issued solicitations to the two firms. The GSA did not issue solicitations to any other firms.

On August 24, 1999, Myers learned that the GSA had issued the solicitations to Unlimited and Diamond. On September 2, 1999, Myers filed a bid protest before the General Accounting Office ("GAO"), alleging that the GSA's solicitation on a sole source basis, rather than on a competitive basis, violated procurement regulations. On September 14, 1999, the GSA awarded the southern Ohio contract to Diamond, and on September 19, 1999, the GSA awarded the northern Ohio contract to Unlimited. Both contracts (which expired on September 30, 2001) were awarded on a sole source basis. The GAO dismissed Myers's protest after the GSA awarded the contracts.

On September 24, 1999, Myers filed a bid protest, together with an application for a temporary restraining order and preliminary injunction in the Court of Federal Claims challenging the award of the contracts on several grounds. Myers requested that the court invalidate the contracts and order the GSA to procure the contracts on a competitive basis. Myers asserted that it would have submitted bids for the contract procurements if the GSA had issued the procurements on a competitive basis, rather than on a sole source basis. In a hearing on September 29, 1999, the court denied Myers's application for a temporary restraining order and preliminary injunction. The government then moved to dismiss on the ground that Myers lacked standing and also moved for judgment on the administrative record on the ground that Myers was not prejudiced by the GSA's award of the contracts on a sole source basis. On September 7, 2000, the Court of Federal Claims held that Myers did have standing to contest the government's alleged improper actions because Myers "ha[d] demonstrated an economic interest in the procurements. Having been denied the opportunity to submit a proposal due to defendant's alleged improper actions, plaintiff potentially lost two contract opportunities." *Myers Investiga-*

*tive & Sec. Servs., Inc. v. United States,* 47 Fed. Cl. 605, 613 (2000). The court also concluded that the government had violated its regulations by awarding the contracts on a sole source basis. The court, however, held that Myers had not shown that it was prejudiced by the government's actions because throughout the proceedings Myers "made no effort to show that it was responsible and could have performed the contracts." *Id.* at 620. The court listed a variety of evidentiary showings that Myers might have made to establish that it was a responsible and capable contractor, but did not. The Court of Federal Claims concluded, "[i]n short, plaintiff has not demonstrated that in the absence of defendant's violation of procurement law that there was a substantial chance it would have received the contracts." *Id.* Accordingly, the court granted the government's motion for judgment on the administrative record.

This appeal followed.

## DISCUSSION

### I

■ "The Court of Federal Claims has jurisdiction to review post-award bid protests pursuant to the Tucker Act, 28 U.S.C. § 1491(b)...." *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1330 (Fed.Cir.2001). "The Court of Appeals for the Federal Circuit has jurisdiction over an appeal from the Court of Federal Claims under 28 U.S.C. § 1295(a)(3)." *Id.* "Whether a party has standing to sue is a question that this court reviews *de novo,*" *Am. Fed'n of Gov't Employees v. United States,* 258 F.3d 1294, 1298 (Fed.Cir.2001), although "we disturb [the Court of Federal Claims's] factual findings only if they are 'clearly erroneous,'" *Alfa Laval Separa-*

*tion, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed.Cir.1999).

### II

The government contends that this case is now moot because the contracts at issue have expired. Myers argues that the case has not become moot because, *inter alia,* it expended funds (unquantified and undocumented in the record) to search the Commerce Business Daily database for a synopsis of the solicitations (by the GSA to Unlimited and Diamond) in order to obtain information necessary to prepare a bid for the contracts.

■ We need not decide the mootness question because we conclude that, even if the case were not moot, Myers lacks standing. Like mootness, standing is a threshold jurisdictional issue. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 102–04, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Therefore, we may decide the issue of standing without reaching the mootness issue. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.* 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (deciding question of standing before question of mootness); *Arizonans for Official English v. Arizona,* 520 U.S. 43, 66–67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (holding that questions of both standing and mootness relate to Article III and therefore may be decided without addressing the merits of the case).

### III

■ "The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing]." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). To some extent, the Court of Federal Claims

appears to have treated the question of whether Myers was prejudiced by the GSA as different from the question of whether Myers has standing. In fact, prejudice (or injury) is a necessary element of standing.

In *Impresa, Alfa Laval,* and *Statistica, Inc. v. Christopher,* 102 F.3d 1577 (Fed.Cir.1996), we held that a potential bidder must establish that it had a substantial chance of securing the award in order to establish standing, without deciding whether the Administrative Disputes Resolution Act of 1996, Pub.L. No. 104–320, 110 Stat. 3870, which amended section 1491, might have liberalized the rules for standing by adopting the broader standards of the Administrative Procedure Act ("APA"). However, in our recent decision in *American Federation,* we held that section 1491(b)(1) did not adopt the APA's liberal standing standards, and that the narrower standards—consistent with the Competition in Contracting Act, 31 U.S.C. §§ 3551–56 ("CICA")—continued to apply. 258 F.3d at 1300–02. In bid protests under the Tucker Act, "we ... construe the term 'interested party' in section 1491(b)(1) in accordance with the [standing requirements of the] CICA and hold that standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Am. Fed'n,* 258 F.3d at 1302. Thus, the substantial chance rule continues to apply.

Myers urges, however, that the substantial chance requirement should not be applied in sole source procurements. Precisely this contention was considered and rejected in our recent decision in *Emery Worldwide Airlines, Inc. v. United States,* 264 F.3d 1071, 1086 (Fed.Cir.2001). We clearly held:

> When a party contends that the procurement procedure in a sole-source case

involved a violation of a statute, regulation, or procedure, it must establish prejudice by showing that it would have had a substantial chance of receiving the award, *see Statistica,* 102 F.3d at 1582. A disappointed party can establish prejudice either by showing: (1) proceeding without the violation would have made the procurement official's decision to make a sole-source award rather than to conduct a competitive bidding process irrational, *see* 5 U.S.C. § 706; *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974), and in a competitive bidding process, the complaining party would have a substantial chance of receiving the award, *see Alfa Laval,* 175 F.3d at 1367; or (2) proceeding without the violation, the complaining party would have a substantial chance of receiving the sole-source award, *see id.*

*Emery Worldwide,* 264 F.3d at 1086.

Thus, in this sole-source procurement, Myers bore the burden of establishing that it had a substantial chance of receiving the awards. In *Impresa* we considered the standard to be applied where the plaintiff claims that the government was obligated to rebid the contract (as contrasted with a situation in which the plaintiff claims that it should have received the award in the original bid process). 238 F.3d at 1334. To have standing, the plaintiff need only establish that it "could compete for the contract" if the bid process were made competitive. *Id.* However, here Myers has not established that it could compete for the contract. The mere fact that it might have submitted a bid in a competitive procurement is not sufficient. Although it need not show that it would have received the award in competition with other hypothetical bidders, it must

show that it would have been a qualified bidder. This Myers has not done.

 Awards may not be made to contractors that are not responsible. 48 C.F.R. § 9.103(a) (2001). The Court of Federal Claims found that Myers "made no effort to show it was responsible and could have performed the contracts. For example, plaintiff has not proven it had the sources or the man-power to supply the guard services sought by these contracts. In addition, plaintiff has not provided the court with any evidence demonstrating that it has been awarded or successfully performed contracts for similar services in the past ." *Myers,* 47 Fed. Cl. at 620. Myers, by its own admission, presented no evidence that it was qualified to secure the awards if they had been made the subject of competitive bids. Therefore, Myers has not shown that it was prejudiced. Myers misses the point in arguing that in a competitive procurement the contractor might not have had an obligation to "voluntarily . . . proffer . . . information" relating to responsibility. *Trilon Educ. Corp. v. United States,* 217 Ct.Cl. 266, 578 F.2d 1356, 1359 (Ct.Cl.1978); *but see* 48 C.F.R. § 9.103(d) (2001) ("A prospective contractor must affirmatively demonstrate its responsibility. . . ."). In challenging an award in court, the burden rests on the protester to affirmatively demonstrate responsibility. Because Myers did not establish that it was an "interested party" under § 1491(b)(1), it did not have standing to bring this bid protest. Accordingly, we affirm the decision of the Court of Federal Claims.

*AFFIRMED.*

## COSTS

No costs.