**H.G. PROPERTIES A, L.P.,**
Plaintiff–Appellant,

v.

**UNITED STATES, Defendant–Appellee,**

and

Quality Leasing & Development,
Defendant–Appellee.

No. 02–5029.

United States Court of Appeals,
Federal Circuit.

June 17, 2003.

Before RADER, Circuit Judge,
ARCHER, Senior Circuit Judge, and
SCHALL, Circuit Judge.

Opinion

ARCHER, Senior Circuit Judge.

H.G. Properties ("HGP") appeals the
United States Court of Federal Claims'

dismissal of its complaint and denial of a preliminary and permanent injunction. *H.G. Props., LP v. United States,* No. 01–474C, Bench Ruling (Nov. 7, 2001). Specifically, HGP argues that the National Park Service ("NPS" or "the government") violated the Competition in Contracting Act ("CICA") because it did not re-bid a contract awarded to Quality Leasing & Development ("QLD") after modifications were made to the original solicitation for offers ("SFO"). Because we hold HGP failed to show it had a substantial chance of submitting a winning bid and therefore lacked standing to bring this action, we *affirm.*

## BACKGROUND

At issue is a contract for NPS's Western Archeological and Conservation Center ("WACC"). WACC curates approximately 5 million museum objects and archives and provides archeological museum assistance to parks in the western United States. HGP owns the building which has housed the WACC since 1979. Due to the expiration of its contract with HGP, NPS sought to procure a follow-on contract. In the words of the contracting officer, NPS wanted to procure the facilities equivalent of a "Cadillac." Thus, the SFO set forth detailed requirements for a state-of-the-art facility. The SFO provided that award of the contract would be made to the offeror whose offer was the most advantageous to the government based on price and five award factors. The combined weight of the award factors was more important than price, with price becoming more important as proposals became more equal in technical merit. The award factors, in descending order of importance were (1) safeguarding the museum collections; (2) prior experience of key personnel; (3) building mechanical systems; (4) building design; and (5) site construction.

NPS eliminated HGP from the competitive range based on technical merit and informational deficiencies. NPS subsequently denied HGP's agency-level protest and awarded the contract to QLD. Approximately two weeks after award, NPS terminated the contract for the convenience of the government. However, NPS did not have the power under the contract to do so. Thus, QLD submitted a certified claim to NPS seeking breach of contract damages. NPS and QLD entered into settlement negotiations, resulting in QLD submitting a revised proposal and the government agreeing to modify the contract. Ultimately, NPS and QLD signed a settlement agreement in which QLD agreed to withdraw its certified claim with prejudice in exchange for a payment by NPS for "restart" costs and NPS's negotiation and execution of a revised version of the contract upon its reinstatement ("the QLD lease" or "the new lease").

Upon learning QLD's contract was reinstated, HGP filed a bid protest in the Court of Federal Claims, alleging NPS had terminated the initial contract and either awarded a second, sole-source contract to QLD, or made material post-award changes to the initial contract, both in violation of the CICA. HGP requested a declaratory judgment and a permanent injunction barring performance of the new lease. QLD intervened and moved to dismiss. The government moved to dismiss for lack of standing because HGP was not an interested party or, in the alternative, for summary judgment. The trial court found that the QLD lease was "part and parcel" of the SFO and thus not a separate procurement. *Id.* at 9. The court further found that since HGP was "properly determined to be significantly beneath the scope of competition and, thus, not eligible to be considered for award under the solicita-

tion, it is not an interested party and has no authority to bring this action." *Id.*

HGP now appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

■ We review the Court of Federal Claims' legal determinations, such as standing, *de novo. See Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1298 (Fed.Cir.2001) (*"American Federation"*).

The CICA requires executive agencies to "obtain full and open competition through the use of competitive procedures." 41 U.S.C. § 253(a)(1)(A) (2000). However, certain modifications can be made to a contract without requiring re-bid. *AT & T Communications, Inc. v. Wiltel, Inc.*, 1 F.3d 1201, 1205 (Fed.Cir. 1993). The dissent asserts that the Court of Federal Claims did not determine whether the government should have been required to re-bid the revised contract under the CICA. However, the record indicates that the trial court did make such a determination, stating "[t]he resulting lease differed in some permissible respects from the solicitation." Although the trial court did not elaborate on the basis of this finding, we see no error in this admittedly economic approach.

In determining whether a modification falls within CICA's competition requirement, this court examines whether the contract as modified materially departs from the scope of the original procurement. *AT & T Communications v. Wiltel*, 1 F.3d at 1205. Such an analysis focuses on the scope of the entire original procurement in comparison to the scope of the contract as modified. *Id.* Thus, a broad

original competition may validate a broader range of later modifications without further bid procedures. *Id.* Another factor in determining the scope of the original competition is "whether the solicitation for the original contract adequately advised offerors of the potential for the type of changes during the course of the contract that in fact occurred, or whether the modification is of a nature which potential offerors would reasonably have anticipated." *Id.* at 1207 (citations omitted).

Here, the proper scope of the contract was the building of a facility for housing artifacts and assistance for museums and parks. The solicitation itself set forth specific space, ventilation, location, and extensive structural requirements, among others. Additionally, the government encouraged bidders to submit suggested modifications to the solicitation so as to create a state of the art facility. Accordingly, the "scope" of the contract would be understood to embrace changes or modifications to these requirements.

■ In a bid protest, the potential bidder must show that it was an "interested party" in order to show standing. *See id.* This is accomplished by the potential bidder establishing that it had a substantial chance of securing the award. *Myers Investigative and Security Servs., Inc. v. United States*, 275 F.3d 1366, 1370 (Fed. Cir.2002) (explaining that "prejudice (or injury) is a necessary element of standing and that the substantial chance rule continues to apply" to the standing requirement).[1]

In the present case, HGP asserts that the trial court erred by not considering whether HGP would have a substantial chance of receiving the award if allowed to

1. Thus, even if there were material post-award changes to the contract, as the dissent asserts, HGP must still show that absent any

such error it would have had a substantial chance of submitting a winning bid. *Id.*

submit a new proposal in a new procurement based on NPS's modified requirements. The trial court's opinion is indeed terse and contains few explicit findings. However, this court views the trial court's statement that "no amount of negotiating could have made plaintiff competitive for award" to be a factual finding that HGP could not have submitted a proposal that would have been able to meet the modified requirements. Because of the brevity of this finding, we clarify below why the district court determined that HGP did not show it had a substantial chance of submitting a winning contract bid on the modified requirements.

HGP argues that given an opportunity to compete on the "revised" contract specifications, its new proposal would include improved space layout and building design relating to protection of secure storage and work areas, as well as HVAC zoning. HGP also asserts its score would improve because the omitted swing space, redundant HVAC, freezer, building automation and blast resistant window requirements were areas in which HGP's proposal received no points. HGP emphasizes its improved proposal would "reduce the difference in the technical scores among the offerors," making its lower contract price a "compelling price advantage over QLD." However, these assertions are not sufficient to show that HGP would likely be awarded a contract under the revised requirements.

As a Best Value contract, technical factors for safeguarding the museum's collection were paramount; price was less important. No record evidence shows HGP can better renovate its existing building now to meet several SFO criteria than before QLD was awarded its contract. Indeed, HGP lost 54 units on building layout, compared with QLD's loss of 15 units. The bulk of the omitted criteria cost HGP 28 units on its technical score. However, several basic items not affected by the revised QLD lease cost HGP 75 units, while QLD only lost 18 units in these same basic areas (including architectural finishing, floor coverings, lighting, door hardware, restrooms, sidewalk, neighborhood, chemically benign interior finishings, and fire resistant walls). HGP lost 40 units by ignoring the energy efficiency and zoning of HVAC criteria; QLD only lost 10 units in these areas. To reconfigure its existing building housing WACC, HGP would still lose points for collection of safety/security during construction. While HGP might improve its score in some areas, no evidence of improvement was evident in many basic areas. HGP simply has not shown it would likely be awarded the contract under the revised requirements. Consequently, HGP did not establish that it was an interested party and it does not have standing to bring this action. The Court of Federal Claims' judgment is therefore affirmed.

SCHALL, Circuit Judge, dissenting.

SCHALL, Circuit Judge.

In the Court of Federal Claims, HGP argued that NPS violated CICA by not conducting a full and open competition for the QLD lease because significant changes were made in the solicitation. HGP contended that it was entitled to compete in what was, in effect, a new procurement. On appeal, HGP renews these arguments.

CICA requires "full and open competition through the use of competitive procedures." 41 U.S.C. § 253(a)(1)(A). CICA does not prevent modification of a contract by requiring a new bid procedure for every change. "[O]nly modifications outside the scope of the original competed contract fall under the statutory competition requirement." *AT & T Communications, Inc. v. Wiltel, Inc.,* 1 F.3d 1201, 1205 (Fed.Cir.

1993) ("*AT & T*"). In determining whether a modification falls within CICA's competition requirement, we examine whether the contract as modified materially departs from the scope of the original procurement. *Id.* The analysis focuses on the scope of the entire original procurement in comparison to the scope of the contract as modified. *Id.* Thus, a broad original competition may validate a broader range of later modifications without further bid procedures. *Id.*

Several factors, such as the extent of any changes in the type of work, performance period, and costs between the contract as awarded and as modified, may be considered to determine the materiality of the modification. *Neil R. Gross & Co.*, 90–1 CPD ¶ 212, at 2 (1990). Another factor that may be considered is whether the solicitation for the original contract adequately advised offerors of the potential for the type of changes that in fact occurred during the course of the contract, or whether the modification is of a nature which potential offerors would reasonably have anticipated under the changes clause. *Id.*; *AT & T*, 1 F.3d at 1207.

If modifications to an existing contract are such that they trigger CICA's competition requirement, then there must be competitive bidding. *See AT & T*, 1 F.3d at 1205. That is what HGP sought in the Court of Federal Claims and continues to seek on appeal. Recently, in *Myers Investigative and Security Servs., Inc. v. United States*, 275 F.3d 1366 (Fed.Cir.2002), we stated:

> In [*Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324 (Fed.Cir.2001) ] we considered the standard to be applied where the plaintiff claims that the government was obligated to rebid the contract (as contrasted with a situation in which the plaintiff claims that it should have re-

ceived the award in the original bid process). 238 F.3d at 1334. To have standing, the plaintiff need only establish that it "could compete for the contract" if the bid process were made competitive. *Id.* 275 F.3d at 1370. Thus, in this case, the Court of Federal Claims was required to determine whether competitive bidding was required because of modifications in the solicitation and, if so, whether HGP "could compete for the contract."

In my view, the trial court erred because it did not conduct an inquiry as to whether the procurement had been modified so as to trigger CICA's competition requirements. Rather, the court simply focused on whether HGP had been improperly denied award of the lease under the solicitation. The court stated: "Since [HGP] was properly determined to be significantly beneath the scope of competition and, thus, not eligible to be considered for award under the solicitation, it is not an interested party and has no authority to bring this action." That was not the proper inquiry. Counsel for HGP had argued to the court: "[T]he issue here is whether we were afforded an opportunity to compete on the new requirements, not whether we should have won under the original solicitation."

HGP is able to point to abundant evidence in the record in support of its argument that the variations in the QLD lease from the solicitation, individually and collectively, were material, substantial, and beyond what offerors could have anticipated. HGP notes that in the QLD lease, the amount of space required has been reduced by over twenty percent, while the swing space has been eliminated. At the same time, other items, including a fully redundant HVAC system, a walk-in freezer, a proximity card key security system, a backup generator and associated independent fuel supply, blast resistant doors and

windows, an air sampling high sensitivity smoke detection system, and high ceiling heights, have been eliminated.

In addition, HGP notes that the QLD lease also differs from the solicitation with respect to the performance period. Although the solicitation sought a fifteen-year firm term with one additional five-year renewal period, the QLD lease provides for a twenty-year firm term, thereby increasing the firm term by thirty-three percent. Similarly, although the original solicitation required occupancy no later than April 1, 2002, the QLD lease was not scheduled to commence until April 1, 2003.

Finally, HGP points out that the QLD lease differs from the solicitation in terms of cost. Although the solicitation required the lessor to pay for base real estate taxes, the QLD lease provides that NPS will reimburse QLD for all real estate taxes. Similarly, although the solicitation required the lessor to pay for utilities during normal hours of building operation, the QLD lease requires NPS to pay for all utilities. HGP notes that these changes and other changes, such as elimination of a museum consultant, amounted to an annual reduction of the rent by $1,084,153, or approximately thirty-five percent.

In my view, in light of the evidence of record, it was incumbent upon the Court of Federal Claims to determine whether the QLD lease departed in material respects from the scope of the solicitation. If the trial court had conducted such an inquiry and had determined that the changes in the solicitation were such as to trigger CICA's competition requirement, then the court would have been required to determine whether HGP "could compete" for the lease. Accordingly, I would vacate the decision of the trial court and remand the case for proceedings consistent with the above requirements.

The majority concludes that HGP did not establish that it was an interested party because it did not demonstrate that it had "a substantial chance of submitting a winning bid." In reaching that conclusion, the majority points to evidence that it says suggests that HGP would not have been awarded the lease. As explained, however, and as HGP argues, HGP was not required to show that it had a "substantial chance" of being awarded the lease. It was only required to show that the solicitation requirements had been modified to such an extent that competition for the lease was required and that it could have competed for the lease. I believe that HGP should be given the opportunity to make that showing.

For the foregoing reasons, I most respectfully dissent.