**PRIDE INTERNATIONAL,
LLC, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 04–1162C.

United States Court of Federal Claims.

Jan. 31, 2005.

David M. Hernandez, Pillsbury Winthrop, LLP, Washington, D.C., for plaintiff.

Brian M. Simkin, Assistant Director, and Richard P. Schroeder, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for defendant, with whom were Peter D. Keisler, Assistant Attorney General, Civil Division, and David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., on the brief.

## Opinion and Order

DAMICH, Chief Judge.

Plaintiff protests the U.S. Marshals Service's award to rival bidders of fixed-price contracts for the lease and maintenance of jet aircraft. *See* 28 U.S.C. § 1491(b)(1). For the reasons stated below, the court dismisses the complaint for lack of jurisdiction, plaintiff having no standing to bring this case.

## I. Background

The facts are taken from the complaint and the statements of plaintiff's counsel during two hearings.

On January 9, 2004, the U.S. Marshals Service ("USMS") issued a Request for Proposals ("RFP"), Solicitation No. MS–04–R–0005, for the lease and maintenance of passenger/transport aircraft for its Justice Prisoner and Alien Transportation System ("JPATS"), in three locations: Oklahoma City, Oklahoma; Mesa, Arizona; and Alexandria, Louisiana.

On Block 10 on the RFP cover page, the USMS designated the solicitation as a set-aside for small businesses,[1] citing the U.S. Department of Commerce's North American Industry Classification System ("NAICS")[2] code 532411. NAICS code 532411, applicable to Commercial Air, Rail, and Water Transportation Equipment Rental and Leasing, ventures require annual receipts under $6 million to qualify for small business treatment. 13 C.F.R. § 121.201. Plaintiff concedes that its receipts exceed $6 million.

Block 10 on the RFP cover page imposes a size standard of 500 employees. Block 27 of the RFP incorporates by reference FAR § 52.212–1,[3] which states: "[T]he small business size standard for a concern which submits an offer in its own name, but which proposes to furnish an item which it did not itself manufacture, is 500 employees."

Plaintiff, Pride International, LLC ("Pride"), a Louisiana aircraft maintenance

---

1. The Small Business Act grants the Small Business Administration ("SBA") broad power to establish size standards and other criteria for qualification as a small business, which other federal agencies must accept as conclusive. *See, e.g., DSE, Inc. v. United States,* 169 F.3d 21, 25–26 (D.C.Cir.1999) (*citing* 15 U.S.C. §§ 632(a)(2)(A), 637(b)(6)). Qualification as a small business permits an entity to bid on and obtain contracts set aside for small businesses, which are not subject to usual rules of competition or government contracting.

2. The SBA uses the NAICS codes to determine which entities qualify as a "small business concern," generally by reference to the number of employees or the amount of annual receipts, for different classes of economic activity or industry. *See* 13 C.F.R. § 121.201.

3. 48 C.F.R. § 52.212–1(a) provides that the NAICS code and small business size standard for the solicitation appear in Block 10 of the RFP cover sheet.

company and the incumbent contractor,[4] was told by the USMS on May 6, 2004 that it had won the contracts in Oklahoma and Louisiana. Unsuccessful offeror Aviation Enterprises, Inc. ("AEI") immediately protested that Pride exceeded the size criteria applicable for a small business set-aside under the RFP.

On May 7, the USMS suspended the contract awards and requested a size determination from the SBA, which determined on May 27 that Pride did not qualify as a small business because its gross revenue exceeded the $6 million ceiling. Pride's appeal to the SBA's Office of Hearings and Appeals was denied on July 28.

The Arizona contract was awarded to Metscan Technologies, Inc. ("Metscan") on June 17, The Oklahoma contract for which plaintiff was found unqualified was awarded to AEI on July 15, 2004. It is unclear to whom the Louisiana contract was awarded.

Pride protested the Metscan award on size grounds and because its employees' costs would be under 50% of the cost for all personnel under the contract (the "nonmanufacturer rule"). *See* 48 C.F.R. § 52.219–14(b)(1).

## II. Procedural Background

Plaintiff alleges that:

1. The SBA erred in concluding that Pride did not qualify when the USMS did not inform potential bidders whether the $6 million or the 500–employee standard applied, allowing Pride reasonably to consider itself eligible.

2. The RFP was so vague and confusing as to be fatally flawed.

3. The SBA erred by failing to investigate plaintiff's allegation that Metscan did not qualify as a small business.

4. Metscan is not qualified to perform the contract because it exceeds the size limits.

Plaintiff seeks equitable relief, including preliminary and permanent injunctions; a declaratory judgment that the USMS's con-

tract awards to Metscan and AEI were arbitrary, capricious, and contrary to law; orders reinstating the USMS's award of the Oklahoma and Louisiana contracts to plaintiff; and attorneys' fees, costs, and proposal preparation expenses.

At a hearing on July 19, 2004, plaintiff argued that the SBA's $6 million receipts/500–employees standards could be read both disjunctively and conjunctively. July 19 Transcript ("7/19 Tr.") at 23. The court questioned whether (1) plaintiff qualified as an interested party when it was not a small business under the NAICS code displayed on the RFP, and (2) plaintiff waived this argument by failing to raise the ambiguity with the contracting officer prior to the bid deadline. Plaintiff repeatedly conceded that it did not qualify under the $6–million-in–receipts standard, but argued that, because the situation was confusing, it should have to satisfy only the employee-number standard. *Id.* at 18–19, 21, 23, 35, 37, 41. Plaintiff's counsel also conceded that the argument over whether the solicitation was confusing was a "red herring" because plaintiff never met the size standard. *Id.* at 40. The court granted counsel leave to consult his client regarding withdrawing the complaint. *Id.* at 42.

At a July 22 hearing, counsel announced that it would proceed with the case, July 22 Transcript ("7/22 Tr.") at 3, and clarified that it was not arguing that it was "confused" as to the standards, but that it was told by the USMS that only the 500–employee standard applied. *See id.* at 4. The court ordered limited discovery. *Id.* at 10.

To accelerate the resolution of this dispute, the court also ordered plaintiff to file a report fully setting out the basis for its claim to interested party status. *See Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1584 (Fed.Cir.1993) ("In establishing predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony.").

---

4. Plaintiff occasionally refers to itself as "the incumbent," but does not specify the locations

when it so served at the time of bidding.

On July 29, 2004, plaintiff filed a "Supplemental Submission" appending copies of the various documents and the substance of conversations with the contracting officer, and defendant submitted the SBA's July 28, 2004 adverse decision on plaintiff's appeal of the SBA determination that it was not a small business.

The SBA ruled that: (1) Pride's appeal of the ambiguous terms of the solicitation and the size standard was untimely, and should have been raised by filing a NAICS code appeal;[5] and (2) the SBA lacked jurisdiction to lower the size standard.

Although it did not need to reach these issues, the SBA held, on the merits, that the 50% "nonmanufacturer rule" did not apply to this lease, which was not for an item sold to the general public, and because plaintiff intended to provide an item that was not manufactured by a small business, Pride not having denied that it would obtain from the Boeing Company one or more of the airplanes Pride intended to lease to the USMS under this contract.[6]

Plaintiff submitted to the court no affidavits or other reliable contemporaneous evidence that the contracting officer approved a 500–employee size standard. All that was submitted were unsworn letters from company officials stating their belief that Pride was qualified because the contracting officer allegedly called the contract a "supply contract," and because the bulk of its value came from supplying, not leasing, aircraft. *See, e.g.,* Pl.'s Suppl. at 4.

■ Even if the contracting officer told plaintiff that the 500–employee size standard was approved, however, plaintiff was not entitled to rely on the statement, because a contracting officer may not amend or clarify the terms of a solicitation *ex parte,* or solely

for the benefit of a single bidder. *See* FAR § 52.214–6 ("Oral explanations or instructions given before the award of a contract will not be binding.") *Cf.* 48 C.F.R. § 15.306(e)(1) ("[g]overnment personnel involved in the acquisition shall not engage in conduct that ... [f]avors one offeror over another"). Moreover, plaintiff may not rely on an inaccurate representation of the law because one seeking to do business with the government must ascertain, at his peril, that the agent with whom he contracts has the requisite authority. *See Monarch Assurance P.L.C. v. United States,* 244 F.3d 1356, 1360 (Fed.Cir.2001).

On September 3, 2004, the court ordered plaintiff to show cause why its complaint should not be dismissed for lack of jurisdiction due to a lack of standing because plaintiff failed to proffer relevant or credible evidence that it qualified under, or was properly authorized to disregard, the NAICS size standard set out in the solicitation.

Plaintiff defended its standing as an interested party on the ground that: 1) if the SBA properly had disqualified Metascan for being too large, plaintiff would have been the only remaining bidder, and 2) plaintiff was misled by the contracting officer's statement that the contract was a supply contract (and, thus, that the 500–employee size standard applied) preventing plaintiff from timely raising questions on this point. Plaintiff also alleges that the contracting officer's *ex parte* statement gave it the right to discover improper *ex parte* communications with other bidders and to determine whether other bidders were told that the solicitation was for supply contracts.

Defendant disputes plaintiff's standing, and claims that other bidders' qualifications for the contracts are irrelevant. Defendant

---

5. A party must file an administrative appeal of an SBA size determination within fifteen days after receiving the determination, if the procurement is still pending. 13 C.F.R. § 134.304(a)(1). A party disputing an NAICS code designation must file an appeal within ten days after the issuance of either the initial solicitation or the amendment. 13 C.F.R. § 134.304(a)(3).

6. On August 12, 2004, defendant filed the SBA's July 30, 2004 denial, No. SIZ–2004–06–24–39, of another of Pride's protests of the Metscan award.

In this protest, Pride had asserted that Metascan was too large to have qualified as a small business. The OHA upheld the SBA Atlanta area office's dismissal of Pride's protest because, under the Small Business Set–Aside Program, a business found to be "other than small" lacks standing to mount a size protest when there is more than one other offeror. *See* 13 C.F.R. § 121.1001(a)(1)(iv). In this procurement, there were two other offerors: Metascan and AEI.

also maintains that plaintiff's subjective "understanding" of the contract terms and its alleged reliance on the contracting officer's statements are irrelevant.

### III. Discussion

In deciding a motion to dismiss for lack of subject matter jurisdiction, the court must construe favorably to the non-movant the unchallenged allegations of the complaint. *See Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989). It may dismiss the challenged claim only if there is no doubt that the non-movant may prove no set of facts entitling it to relief. *Id.*

Before the court may reach the merits of plaintiff's claim of entitlement to rely on the 500–employee standard, plaintiff must demonstrate its standing. *See Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1370 (Fed.Cir.2003) ("Because standing is jurisdictional, lack of standing precludes a ruling on the merits."); *see also Myers Investigative and Security Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed.Cir.2002) (Standing is "a threshold jurisdictional issue.") (*quoting Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–4, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

Any party, or the court, *sua sponte*, may suggest the lack of standing at any stage of the litigation. *See Pandrol USA, LP v. Airboss Railway Prods., Inc.*, 320 F.3d 1354, 1367 (Fed.Cir.2003) (*citing Nat'l Org. of Women, Inc. v. Scheidler*, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)).

The three prerequisites to standing in a federal court are: a) an "injury in fact" or "the invasion of a legally protected interest," b) a causal connection between the injury and the conduct complained of, and c) the likelihood, not merely speculation, that the court's decision would redress the injury. *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed.Cir.2003) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

The party invoking jurisdiction bears the burden of establishing the elements of standing. *Myers Investigative and Security Servs., Inc.*, 275 F.3d at 1369 (*citing Lujan*, 504 U.S. at 561, 112 S.Ct. 2130).

This court's jurisdiction under 28 U.S.C. § 1491(b)(1) is limited to actions by an "interested party" objecting to an agency's solicitation of bids or proposals. The term "interested party" in § 1491(b)(1) means "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Myers Investigative and Security Servs., Inc.*, 275 F.3d at 1370 (*quoting Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed.Cir. 2001)). Thus, to show standing, "a potential bidder must establish that it had a substantial chance of securing the award ..." *Id.* (citations omitted); *see also Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed.Cir.2003).

Plaintiff's argument that it is an interested party relies on a single SBA administrative decision. *See Size Appeal of Lajas Indus., Inc.*, SBA No. 4285 (Jan. 9, 1998), *available at* 1998 WL 10892.

Lajas lost a military clothing contract when its rival protested to the SBA that it was "other than small." *Lajas, supra*, at 2. The SBA agreed, and also rejected Lajas' protest that its rival was not small. *Id.*

On appeal, the SBA's Office of Hearings and Appeals ("OHA") considered, *sua sponte*, Lajas' standing to protest the contract award. It held that Lajas had standing based on 13 C.F.R. § 121.1001(a)(1)(iv), which provides that "[a] concern found to be other than small in connection with the procurement is not an interested party unless there is only one remaining offeror after the concern is found to be other than small," when Lajas and its rival were the only offerors. *See Lajas*, supra, at 3–4.

However, one critical fact distinguishes the circumstances in *Lajas* from those at hand. In this case, there were three offerors: plaintiff, Metascan, and AEI; in *Lajas*, there were only two. Plaintiff's wish or expectation that Metascan would be eliminated, leav-

ing AEI as the lone rival, is both speculative and, in retrospect, incorrect.

### IV.  Conclusion

Because plaintiff failed to carry its burden of showing that it had a substantial chance of obtaining the award and, having suffered no injury-in-fact but only speculative injury, plaintiff's complaint must be, and hereby is, dismissed for lack of standing.  Therefore, defendant's motion to dismiss for lack of jurisdiction is GRANTED.

The Clerk of the Court shall enter judgment for the defendant.