DYK, Circuit Judge,
dissenting.
I dissent from the majority’s holding that Weeks Marine has Article III and *1372 statutory standing to challenge the solicitation of the U.S. Army Corps of Engineers (“Corps”).
As described in the majority opinion, Weeks Marine filed a pre-award challenge to a solicitation by the Corps. The solicitation changed the Corps’ method of awarding dredging work in the Southeast from a competitive sealed bidding process to a process involving negotiated indefinite delivery indefinite quantity (“IDIQ”) multiple-award task order contracts (“MA-TOCs”). Weeks Marine alleged, inter alia, that the solicitation was contrary to 10 U.S.C. § 2304(a)(2), which requires the use of sealed bidding procedures under certain circumstances. Weeks Marine made no allegations of injury in its complaint and appears to have filed no affidavits or declarations providing a basis for a finding that the solicitation was likely to cause injury. In its memorandum supporting its motions for injunctive and declaratory relief, Weeks Marine asserted it would be harmed by the “potential loss of valuable business ... that it could otherwise obtain under the required sealed bidding procedures.” Mem. P. & A. Supp. Pl.’s Mot. for TRO, Prelim. Inj., Permanent Inj. & Declaratory J. at 28, Weeks Marine, Inc. v. United States, 79 Fed.Cl. 22 (Fed.Cl.2007) (No. 07-700C) (emphasis added). Weeks Marine did not allege that it was actually likely to be awarded less dredging work by the Corps under the solicitation. Indeed, the majority goes to great pains to point out that Weeks Marine will continue to be included in the pool of prospective contractors. See Maj. Op. 1360. At oral argument, Weeks Marine asserted that it had “thrived under the business model of sealed bidding and the low bidder” and “built [its] compan[y] ... and marketing plan that way,” argued that it would be less able “to control [its] own destiny” under the Corps’ new procedure, but admitted that “we don’t know” whether the new procedure would injure Weeks Marine.[1] Weeks Marine was unable to identify any reason that it was likely to lose business as a result of the change in procedures, or how it was disadvantaged compared to other bidders.
I Lack of Article III Standing
The government asserts that Weeks Marine lacks standing. In any event, “[b]e-cause Article III standing is jurisdictional, this court must consider the issue sua sponte even if not raised by the parties.” Fuji Photo Film Co. v. Int’l Trade Comm’n, 474 F.3d 1281, 1289 (Fed.Cir.2007).
Article III standing requires “an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or *1373 hypothetical.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (footnote, citations, and quotation marks omitted). Put differently, “[t]he injury alleged must be ... ‘distinct and palpable,’ and not ‘abstract’ or ‘conjectural’ or ‘hypothetical.’ ” Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (citations omitted). Injury can be established by affidavits and other submissions that “present disposi-tively more than ... mere ‘general aver-ments’ and ‘conclusory allegations.’ ” Friends of the Earth, Inc. v. Laidlaw Envt’l Servs. (TOC), Inc., 528 U.S. 167, 184, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).
The Supreme Court has established the requirements for pre-contract award standing in Northeastern Florida Chapter of Associated General Contractors of America v. Jacksonville, 508 U.S. 656, 666, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993), and Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 210-12, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995). The Supreme Court held in Associated General Contractors that a non-minority contractor had standing to challenge a city’s practice of setting aside a percentage of its contracts for bidding only by minority contractors, because “the ‘injury in fact’ is the inability to compete on an equal footing in the bidding process, not the loss of a contract.” 508 U.S. at 666, 113 S.Ct. 2297. Following Associated General Contractors in Ada-rand, the Supreme Court held that a subcontractor had standing to raise an equal protection challenge to government financial incentives provided to general contractors hiring disadvantaged subcontractors. See Adarand, 515 U.S. at 210-12, 115 S.Ct. 2097. The plaintiff subcontractor alleged that because it was not a disadvantaged subcontractor, it would suffer future competitive harm from this practice. The Court held that the subcontractor had satisfied the requirement that “the alleged injury is not too speculative for Article III purposes — that the injury is ‘certainly im-pending1 ” because the record indicated that the subcontractor would “very likely” bid on future contracts subject to the government’s practice and “often must compete for such contracts against small disadvantaged businesses.” Id. at 211-12, 115 S.Ct. 2097 (quoting Lujan, 504 U.S. at 565 n. 2,112 S.Ct. 2130).
The record does not show that Weeks Marine is likely to be disadvantaged by the Corps’ IDIQ MATOC solicitation. The Court of Federal Claims noted that Weeks Marine “admits that it is a ‘major player in the dredging industry5 and would likely be awarded an IDIQ contract and subsequent task orders.” Weeks Marine v. United States, 79 Fed.Cl. 22, 34 (2007). Because Weeks Marine has not shown that it is likely to be awarded less dredging work under the MATOC system, its injury is “conjectural” rather than “impending.”
The majority does not suggest that Weeks Marine is less likely to receive awards under the new procedure, or that it is likely to be injured by any reductions in the amount of business it receives. The majority’s theory appears to be that the claimed illegality of the solicitation is itself sufficient to establish injury. However, the Supreme Court has made clear that the existence of illegal conduct is not sufficient to confer standing. “[A]n asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court.” Allen, 468 U.S. at 754, 104 S.Ct. 3315. There must be a showing of injury in addition to a showing of illegality to satisfy the requirements for standing, in order to “assure[] that ‘there is a real *1374 need to exercise the power of judicial review in order to protect the interests of the complaining party.’ ” Summers v. Earth Island Inst., — U.S. -, 129 S.Ct. 1142, 1149, 173 L.Ed.2d 1 (2009) (quoting Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 221, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)).
The majority also suggests that Weeks Marine has established standing either with its past reliance on the previous sealed bidding procedure in establishing its business, or with its future reliance on the new IDIQ procedure that might later be overturned as illegal. See Maj. Op. 1360-61, 1362. According to the majority, regardless of Weeks Marine’s level of success under the new solicitation procedure, such reliance may injure Weeks Marine’s ability to compete for dredging contracts. But reliance, like alleged illegality, cannot establish standing without a showing of injury, and the majority cites no authority establishing that mere reliance without injury is sufficient.
The majority appears to bolster its decision on the theory that Weeks Marine would later be barred from challenging the new solicitation procedure. See Maj. Op. 1363. There are two responses. First, if Weeks Marine were later injured by the solicitation, it would not in fact be barred from challenging the solicitation at that time. The theory that Weeks Marine’s challenge to the Corps’ MATOC solieitation would not be possible after the IDIQ contracts and task orders had been awarded is based on a misreading of the statutes and regulations. Section 1491(b)(1) of Title 28 of the United States Code specifically provides that challenges to solicitations may be brought “without regard to whether suit is instituted before or after the contract is awarded.” To be sure, 10 U.S.C. § 2304c(e)(l) provides that “[a] protest is not authorized in connection with the issuance of a task order or delivery order except for — (A) a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued; or (B) a protest of an order valued in excess of $10,000,000.” (emphasis added); see also FAR ¶ 16.505(a)(9). But the statute does not limit protests of an overall solicitation or IDIQ contract; it only limits challenges to the task order or delivery order. Weeks Marine or another contractor thus could challenge the Corps’ overall solicitation after, rather than only before, the IDIQ or task order awards.[2]
Second, standing is not created by the absence of parties with proper standing. “The assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing.” Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. at 227, 94 S.Ct. 2925. “This view would convert standing into a requirement that must be observed only when satisfied.” Valley Forge Christian *1375 Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 489, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); see also United States v. Richardson, 418 U.S. 166, 179, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974). The fact that no party could satisfy the usual requirements for standing does not create standing in a party who has not suffered injury.
II Lack of Statutory Standing
As the majority recognizes, the applicable statute imposes even more stringent standing requirements. See Maj. Op. 1359. Under the statute, the Court of Federal Claims has jurisdiction
to render judgment on an action by an interested party objecting to .a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement ... without regard to whether suit is instituted before or after the contract is awarded.
28 U.S.C. § 1491(b)(1) (emphases added). In American Federation of Government Employees v. United States, we reviewed at length the history of § 1491(b)(1) and concluded that Congress did not intend to confer standing under the more liberal standing rules of the Administrative Procedure Act, 5 U.S.C. § 702, but instead limited standing under § 1491(b)(1) to “disappointed bidders” and to prospective bidders whose chances of securing the award would be adversely affected. 258 F.3d 1294,1302 (Fed.Cir.2001). We stated that we “construe the term ‘interested par-ty1 in § 1491(b)(1) in accordance with the [Competition in Contracting Act, 31 U.S.C. §§ 3551-56], and hold that standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract.” Id. at 1302 (emphasis added).
In the case of pre-award protests, we have repeatedly limited standing under § 1491 to those bidders who have a “substantial chance” of securing the award and who have been disadvantaged by the government procurement decision they challenge. In Rex Service Corp. v. United States, we held that a contractor did not have standing because it did not “establish that it had a ‘substantial chance’ of receiving the contract” and thus “prove a direct economic interest as a putative prospective bidder.” 448 F.3d 1305, 1308 (Fed.Cir.2006); see also Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed.Cir.1996) (holding that a contractor failed to show a “substantial chance it would have received the contract award but for” agency error). In CACI Field Services, Inc. v. United States, we held that a contractor could not prevail in a pre-award bid protest without showing prejudice from an alleged violation of a procurement statute or regulation, because “prejudice is a separate element which must be proven.” 854 F.2d 464, 466 (Fed.Cir.1988); see also Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed.Cir.2002) (“[Prejudice (or injury) is a necessary element of standing.”).
Weeks Marine here is not a “disappointed bidder,” nor has it shown that its direct economic interests have been adversely affected. Indeed, for all the record reveals, Weeks Marine will continue to receive exactly the same contracts that it would have received under the earlier sealed bidding procedure. Allowing Weeks Marine to es *1376 tablish standing without a showing of concrete injury vastly and improperly expands the number of parties potentially qualifying for standing.
Under these circumstances, it seems to me clear that Weeks Marine does not have Article III or statutory standing, and I respectfully dissent from the majority’s contrary conclusion.

. Q. You may be just as successful in the future as you’ve been in the past.... It seems to me that it's really speculative to say that Weeks is going to be injured by this new approach to the contract.
A. Well, we don't know, your Honor, but here’s what we do know, you’re absolutely correct that Weeks and other companies have thrived under the business model of sealed bidding and the low bidder, and— and they've built their companies and — and marketed, ah — their marketing plan that way....
Q. Why is it less likely that Weeks is going to be successful under this new system?
A. Because they can control their own destiny in having low bids with which they can make money. They can’t control their destiny when the Corps of Engineers is going to introduce subjective evaluations on things other than price.
Oral Arg. 18:00-18:31, 19:30-19:54.

. Our holding in Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308 (Fed.Cir.2007), is not to the contrary. In Blue & Gold Fleet the bidder waited until after the contract award to challenge a solicitation. We held that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.” Id. at 1313. Our opinion in Blue & Gold Fleet does not suggest that a contractor can challenge a procurement system before actually suffering or being likely to suffer an injury. Blue & Gold Fleet holds only that if the contractor is injured and has the "opportunity to object” to the solicitation, it cannot defer its challenge to a period after which the contract is awarded.