REYNA, Circuit Judge,
dissenting.
Because Tinton Falls has not established by preponderant evidence that it has a direct economic interest in the solicitation, I respectfully dissent from the majority’s decision to reach the merits of this case.
The standing question in this case is .governed by 28 U.S.C. § 1491(b)(1), which “imposes more stringent standing requirements than Article III.” Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed.Cir.2009). Section 1491(b)(1) allows an “interested party” to object “to a solicitation ... for bids or proposals for a proposed contract” or to “any alleged violation of statute or regulation in connection with a procurement or proposed procurement.” Standing under § 1491(b)(1) “is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by the failure to award the contract.” Am. Fed’n of Gov’t Emps., AFL-CIO v. United States, 258 F.3d 1294, 1302 (Fed.Cir.2001).
As the bid protester, Tinton Falls bears the burden of establishing the elements of *1364 standing. See Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed.Cir.2002). Because standing is an “indispensable part of the plaintiffs case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.” Lujan v. Defs. of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). General allegations of standing may suffice at the pleading stage, but facts supported by affidavits or other evidence are required at summary judgment. Id. Those facts must be “supported adequately by the evidence adduced at trial.” Id. (quoting Gladstone, Realtors v. Vill. of Bellwood, 441 U.S. 91, 115 n. 31, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)).
Tinton Falls’ bid protest progressed to trial on the administrative record, and facts establishing standing should have been adequately supported by the record. See J.A. 3774. Judgment on the administrative record is the final stage in a bid protest and requires the Court of Federal Claims “to make factual findings from the record evidence as if it were conducting a trial on the record.” Bannum, Inc. v. United States, 404 F.3d 1346, 1353-54 (Fed.Cir.2005). Tinton Falls was therefore required to establish by preponderant evidence that it had a direct economic interest in the solicitation. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed.Cir.1988) (Once standing is called into question, the party asserting standing “bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.”).[1]
Tinton Falls could have conceivably met its burden in one of two ways. As the. majority notes, an actual bidder such as Tinton Falls can demonstrate that it would have had a “substantial chance” of securing the original contract if not for an alleged error in the procurement process. Labatt Food Serv., Inc. v. United States, 577 F.3d 1375, 1378 (Fed.Cir.2009). Tin-ton Falls could have also demonstrated that a successful protest would obligate the government to rebid the contract and that Tinton Falls would be qualified to compete on the rebid. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1334 (Fed.Cir.2001).
The record evidence, however, leaves no question that Tinton Falls would not have secured the original contract. Tinton Falls is other than small and does not qualify to compete for a small business set-aside contract. See J.A. 2808-10 (Notice to Tinton Falls that “[t]he Small Business Administration (SBA) has made a formal size determination that your business is other than small”). Even if the government removed the small business set-aside and issued a revised, unrestricted solicitation, the record indicates that two other small businesses submitted lower bids than Tinton Falls and would have been next in line to receive the original contract.
Nor has Tinton Falls established through preponderant evidence that a successful protest would obligate the government to rebid the contract as unrestricted or that Tinton Falls is qualified to compete on rebid. Cf. Impresa, 238 F.3d at 1333. To the contrary, the record suggests that the government would not be obligated to rebid. Excluding DMC and the four other than small businesses associated with Hotels Unlimited, the record indicates that three proposals remained in the competi *1365 tive range. Those three proposals were submitted by offerors that self-certified as small businesses. Given that two or more offers from small businesses remained in competitive range, the government would have been obligated to award the contract to the next small business in line, or at least obligated to request revised proposals from the three offerors that remained in competitive range. See FAR § 19.502-2 (requiring an acquisition such as the one at issue here to be set aside for small business absent “a reasonable expectation” of obtaining offers from responsible small businésses).
Court of Federal Claims precedent should have guided the standing question in this case. In International Management Services, Inc. v. United States, the Court of Federal Claims held that a bid protestor lacked standing to challenge a small business set-aside contract because the protester had been deemed other than small. 80 Fed.Cl. 1, 4-8 (2007). On those facts, “there is no chance, much less a substantial chance, that plaintiff could be awarded the contract in the event that the [government’s] contract with defendant-intervenor is set aside.” Id. at 6. The protester made an argument identical to the one Tinton Falls makes here, arguing the defendant-intervenor and the remaining offerors were themselves unqualified. Id. The protester thus argued that if the Court of Federal Claims sustained its protest and found that “no offeror was small, ... the government would be obligated to rebid the contract (using full and open competition), and [it] could compete for the contract once again.” Id. (quoting Pl.’s Opp’n Def.’s Mot. Dismiss at 22) (alterations in original). The Court of Federal Claims rejected that argument because, like here, there remained a small business in competitive range. Id. at 6-7; see also Taylor Consultants, Inc. v. United States, 90 Fed.Cl. 531, 541-43 (2009). Under International Management Services, the Court of Federal Claims should have found that Tinton Falls lacked standing.
The fact that the three remaining small businesses in competitive range originally submitted technically unacceptable proposals is insufficient to establish Tinton Falls’ standing. The technical unacceptability of an otherwise qualified offer in competitive range does not limit the offeror’s ability to establish a substantial chance of winning a contract. See Allied Tech. Grp., Inc. v. United States, 94 Fed.Cl. 16, 37-38 (2010), aff'd, 649 F.3d 1320 (Fed.Cir.2011). Even if the technical unacceptability of the remaining small business offers required the government to reassess whether two or more technically acceptable small businesses remained, the record indicates that seven additional vendors were interested in the solicitation. We cannot presume from the record that those seven additional vendors are other than small or that those vendors would submit technically unacceptable offers in the future. Nor can we presume that the three remaining small businesses in competitive range would be incapable of submitting technically acceptable proposals on rebid. As far as the record reveals, Tinton Falls failed to make any allegation to the contrary. See J.A. 3566-67 (Complaint). It had the burden to do so.
Only in a future hypothetical world in which the government found no two eligible small businesses could Tinton Falls compete on rebid. Yet Article III standing, and by extension the more demanding standard provided by § 1491(b)(1), requires more than speculation or abstract hypotheticals. Article III standing requires an “alleged (and ultimately proved) ... ‘injury in fact’ — a harm suffered by the plaintiff that is ‘concrete’ and ‘actual or imminent, not conjectural or hypothetical.’ ” Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 *1366 L.Ed.2d 210 (1998) (internal quotation marks omitted) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)). Nothing in the record suggests that a future rebid or Tinton Falls’ competition on such a rebid is even a possibility, much less a substantial chance. The Court of Federal Claims’ finding to the contrary is clearly erroneous.
The majority rests its analysis of standing in part on the fact that the government does not “seriously dispute” that Tinton Falls has standing, Maj. Op. at 1358-59, and that “none of the parties disputes the Claims Court’s finding that [Tinton Falls’ future competition] is at least a realistic possibility,” id. at 1360. Yet a party’s lack of argument or concession regarding standing is irrelevant. Standing is a nonwaivable jurisdictional requirement. Citizens for a Better Env’t, 523 U.S. at 102-04, 118 S.Ct. 1003; Myers, 275 F.3d at 1369 (“standing is a threshold jurisdictional issue”). Because the record is void of preponderant evidence establishing this jurisdictional requirement, I respectfully dissent.

. Tinton Falls had the same burden in the Court of Federal Claims because ”[t]he Court of Federal Claims, though an Article I court, ... applies the same standing requirements enforced by other federal courts created under Article III.” Weeks Marine, 575 F.3d at 1359 (quoting Anderson v. United States, 344 F.3d 1343, 1350 n. 1 (Fed.Cir.2003)).