**CHAS. H. TOMPKINS COMPANY,**
**Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 99–122C.

United States Court of Federal Claims.

May 12, 1999.

Douglas L. Patin, Washington, D.C., for plaintiff. Robert J. Simon, of counsel.

Virginia M. Lum, Washington, D.C., with whom was Acting Assistant Attorney General David M. Ogden, for defendant. John Krump, Federal Bureau of Investigation, Washington, D.C., of counsel.

## OPINION

BUSH, Judge.

This is a pre-award bid protest in which plaintiff, Chas. H. Tompkins Company (Tompkins), seeks to prevent the Federal Bureau of Investigation (FBI), from awarding a construction contract for the erection of buildings at Quantico, Virginia. Tompkins

---

1. The Administrative Record in this case is attached to Defendant's Findings of Uncontrovert-

protests the FBI's intent to award to the apparent low offeror, Bell/BCI (BCI), because of BCI's alleged failure to meet certain past performance requirements set forth in Solicitation No. 7189 (solicitation).

The matter is currently before the court on plaintiff's motion for preliminary injunction, permanent injunction, and declaratory judgment; on defendant's opposition thereto; and on the parties' cross-motions for summary judgment on the administrative record.

## BACKGROUND

On October 19, 1998, the FBI issued Invitation for Bid (IFB) No. 7189, which invited sealed bids for the construction of three new buildings (a state-of-the-art laboratory, a central utilities plant and a conference center) at the FBI's Quantico, Virginia facility. Included in the solicitation, under the caption "Instructions, Conditions, Notices & Bidding Information" was section 1.24 "Past Performance Evaluation", the focal point of the current dispute, which instructed bidders as follows:

> In accordance with FAR 36.201(c)(2) and 42.1502, the apparent low bidder shall supply the Name, Point of Contact, Address and Telephone Numbers for at least five (5) Government Agencies and/or Private Owners from which it was contracted to perform the same or similar projects with respect to scope, size, and dollar value within the last three (3) years. The projects presented should be within ten percent of the bid price offered for the project. This information will be used by the Government to assist in its determination of responsibility in accordance with Subpart 9.1 of the FAR.

Plaintiff was among the offerors filing timely bids. Bids were opened on December 17, 1998, and BCI was identified as the apparent low offeror, with a bid of $115,950,000; plaintiff was the next lowest bidder. The Government estimate for the acquisition was in excess of $70,000,000. Administrative Record (AR) at 5, 17.[1]

---

ed Fact as an appendix, with the exception of one supplemental document (an excerpt from an

As the apparent-low offeror, BCI submitted its past performance information pursuant to section 1.24 of the IFB for a responsibility determination by the agency in accordance with section 9.104 of the Federal Acquisition Regulations (FAR).[2] BCI's submission presented a list of 19 completed projects, five of which had dollar values ranging from $16,377,942 to $75,481,421. Five other projects listed by BCI were on-going projects with dollar values ranging between $18,401,600 and $63,000,000. AR at 8–10. It is undisputed that BCI's submission listed at least five projects whose scope and size were the same as or similar to the present project. It is also undisputed that none of the projects listed by BCI were either within ten percent of the bid price offered for the present project or even similar in dollar value to the present project.

On January 6, 1999, Tompkins filed an agency level protest with the FBI, alleging that section 1.24 of the IFB set forth definitive responsibility criteria and that BCI had failed to meet one of those definitive responsibility criteria. By letter dated February 5, 1999, the agency denied Tompkins' protest on the basis that the information requested in section 1.24 was not definitive responsibility criteria. AR at 15, 5–7. On February 11, 1999, Tompkins filed a protest on the same grounds with the General Accounting Office (GAO). By decision dated March 5, 1999, GAO dismissed Tompkins' protest, stating that the language in section 1.24 expresses precatory guidance rather than establishing a mandatory standard. GAO held that the only requirement in the clause—as expressed by the use of the word "shall"—refers to the literal submission of information and not to the scope of the past performance (as would have been reflected in the content of the submissions). GAO went on to state that: "Regarding the actual amount or type of experience, the IFB simply establishes guidelines for what these 'should be' like, and states further that the government will use this information 'to assist it in its determination of responsibility.'" GAO cited several Comptroller General decisions on definitive responsibility criteria which stood for the proposition that such clauses require prospective contractors to meet a specific, objective standard. GAO then concluded that "[t]his type of specific and objective standard, establishing a precondition for award, is simply not set forth in the clause at issue here; rather, the clause merely provides guidelines for bidder information for use in the agency's assessment of past performance as part of its general determination of re-

---

Army Corps of Engineers Request For Proposals) submitted by Plaintiff and permitted in to supplement the administrative record at oral argument.

2. Subpart 9.1 of the FAR prescribes the policies, standards, and procedures for determining whether prospective contractors are responsible:

9.104–1 General Standards.

To be determined responsible, a prospective contractor must—

(a) Have adequate financial resources to perform the contract, or the ability to obtain them (see 9.104–3(a));

(b) Be able to comply with the required or proposed delivery or performance schedule, taking into consideration all existing commercial and governmental business commitments;

(c) Have a satisfactory performance record (see 48 CFR 9.104–3(b) and part 42, subpart 42.15). A prospective contractor shall not be determined responsible or nonresponsible solely on the basis of a lack of relevant performance history, except as provided in 9.104–2;

(d) Have a satisfactory record of integrity and business ethics;

(e) Have the necessary organization, experience, accounting and operational controls, and technical skills, or the ability to obtain them (including, as appropriate, such elements as production control procedures, property control systems, quality assurance measures, and safety programs applicable to materials to be produced or services to be performed by the prospective contractor and subcontractors) (see 9.104–3(a));

(f) Have the necessary production, construction, and technical equipment and facilities, or the ability to obtain them (see 9.104–3(a)); and

(g) Be otherwise qualified and eligible to receive an award under applicable laws and regulations.

9.104–2 Special Standards.

(a) When it is necessary for a particular acquisition or class of acquisitions, the contracting officer shall develop, with the assistance of appropriate specialists, special standards of responsibility. Special standards may be particularly desirable when experience has demonstrated that unusual expertise or specialized facilities are needed for adequate contract performance. The special standards shall be set forth in the solicitation (and so identified) and shall apply to all offerors.

sponsibility, without establishing any definitive criteria." AR at 27–28.

On March 11, 1999, Tompkins filed the present case, asserting the same arguments presented to the FBI and to GAO. The FBI did not make contract award under the solicitation and, during a conference call held on March 12, 1999, defendant agreed to withhold award until March 29, 1999. By Order dated March 16, 1999, defendant was directed to provide ten days advance notice if the FBI decided to proceed with bid opening prior to March 29, 1999. To date, no such notice has been provided, and so it has not been necessary to rule on plaintiff's request for a preliminary injunction. Cross-motions for summary judgment on the administrative record have been filed and are currently pending. Oral argument was held on March 22, 1999.

██ The court has jurisdiction over Tompkins' objections to the solicitation pursuant to 28 U.S.C. § 1491(b)(1) and is authorized to grant an appropriate remedy, "including declaratory and injunctive relief," if those objections prove well founded. *Id.* § 1491(b)(2). In bid protest cases like the instant action, it is the agency's decision, not the decision of the GAO that is the subject of judicial review. *Analytical & Research Technology, Inc. v. United States,* 39 Fed.Cl. 34, 41 (1997); *Cubic Applications, Inc. v. United States,* 37 Fed.Cl. 339, 341 (1997). Being an advisory opinion, this Court is not bound by the GAO determination. *Id.* Nonetheless, in reviewing a protestor's appeal to this court, the GAO's advisory decision is made a part of the administrative record before this court and, "in view of the expertise of the GAO in procurement matters, this court may rely upon such decision for general guidance to the extent it is reasonable and persuasive in light of the administrative record." *Cubic Applications, Inc.,* 37 Fed.Cl. at 342; *see also Analytical & Research Technology, Inc.,* 39 Fed.Cl. at 42.

## DISCUSSION

### A. Standard of Review

Cross-motions for judgment on the administrative record are treated as motions for summary judgment under RCFC 56(a). *Nickerson v. United States,* 35 Fed.Cl. 581, 588 (1996), *aff'd,* 113 F.3d 1255 (Fed.Cir. 1997). Each motion must be evaluated on its own merits and will be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir.1987). The fact both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988). However, "[a] motion for summary judgment upon the administrative record, or for summary judgment, is an appropriate vehicle to scrutinize an agency's procurement actions because the issues are matters of contractual and regulatory interpretation." *Analytical & Research Technology, Inc. v. United States,* 39 Fed.Cl. 34, 43 (1997).

Under the standard of review applicable in bid protests, an agency's procurement decision will not be disturbed unless shown to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1994); 28 U.S.C. § 1491(b)(4). While the agency's decision is entitled to a "presumption of regularity," *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), that presumption does not shield the agency's decision from a "thorough, probing, in-depth review." *Id.* Although the court "recognize[s] the relevant agency's technical expertise and experience, and defer[s] to its analysis unless it is without substantial basis in fact," *Federal Power Comm'n v. Florida Power & Light Co.,* 404 U.S. 453, 463, 92 S.Ct. 637, 30 L.Ed.2d 600 (1972), the court must also perform an informed review of even technical decisions in order to meaningfully exercise its jurisdiction. *Prineville* at 910–911.

Pursuant to the Competition in Contracting Act (CICA), the government is required to specify its needs and solicit proposals "in a manner designed to achieve full and open competition for the procurement." 41 U.S.C. § 253(a)(1)(A) (1994); 10 U.S.C.

§ 2305(a)(1)(A) (1994). A consequence of this duty is the requirement that solicitation provisions which restrict competition be used only "to the extent necessary to satisfy the needs of the agency or as authorized by law." 41 U.S.C. § 253(a)(2)(B); 10 U.S.C. § 2305(a)(1)(B)(ii); 48 C.F.R. § 11.002(a)(1)(ii) (1998). "Unnecessarily restrictive specifications or requirements that might unduly limit the number of bidders are prohibited." 48 C.F.R. § 14.101(a).

## B. Merits

Plaintiff and defendant, in this case, have taken one very short IFB specification and reached totally opposite conclusions as to the meaning of that provision. Tompkins views the disputed provision (the responsibility specification) as setting forth definitive responsibility criteria or special standards as described in FAR 9.104–2, while the government characterizes that same provision as setting forth general responsibility standards as described in FAR 9.104–1. GAO has defined definitive responsibility criteria as specific and objective standards established by an agency for use in a particular procurement for the measurement of a bidder's ability to perform the contract. These special standards of responsibility limit the class of bidders to those meeting specified qualitative and quantitative qualifications necessary for contract performance. *MEI, Inc.,* B–277235.2, 97–2 C.P.D. ¶ 138; *M & M Welding & Fabricators, Inc.,* B–271750, 96–2 C.P.D. ¶ 37, *recon. denied,* B–271750.2, 97–1 C.P.D. ¶ 124; *Topley Realty Co., Inc.,* B–221459, 86–1 C.P.D. ¶ 398.

GAO decisions have set forth numerous instances in which the Comptroller General has identified examples of procurements that contain definitive responsibility criteria. Several of these decisions, in which definitive responsibility criteria have been found, use language describing requirements analogous to that contained in the disputed provision. *See, e.g., Urban Masonry Corporation,* B–213196, 84–1 C.P.D. ¶ 48 (IFB required installer to have been regularly engaged for a minimum of five years in the erection of architectural precast concrete units similar to those required for the project); *M & M Welding & Fabricators, Inc.,* 96–2 C.P.D.

¶ 37 (IFB requirement to show documentation of at least three previously completed projects of similar scope); *D.H. Kim Enterprises, Inc.,* B–255124, 94–1 C.P.D. ¶ 86 (IFB requirements for 10 years of general contracting experience in projects of similar size and nature and for successful completion of a minimum of two contracts of the same or similar scope within the past two years, on systems of a similar size, quantity and type as present project); *Roth Brothers, Inc.,* B–235539, 89–2 C.P.D. ¶ 100 (IFB requirement to provide documentation of at least three previously completed projects of similar scope); and *J.A. Jones Construction Company,* B–219632, 85–2 C.P.D. ¶ 637 (IFB requirement that bidder have performed similar construction services within the United States for three prior years). In each instance, GAO held that the foregoing criteria were specific and objective standards limiting bidders to those meeting the specified qualitative and quantitative qualifications and were therefore properly categorized as definitive responsibility criteria.

GAO has also described instances in which it did not consider the criteria set forth in procurements as rising to the level of definitive responsibility criteria. *See, e.g., Rolen–Rolen–Roberts International, Rathe Productions, Incorporated/Design Production, Inc.,* B–218424.2, B–218424.3, 85–2 C.P.D. ¶ 113 (RFP requirement that offeror be regularly engaged in the business and have established an acceptable record in the past for completing similar contracts); *M & M Welding,* 96–2 C.P.D. ¶ 37 (IFB requirement for offeror's regular engagement in the installation and service of coal/gas-fired boilers); *Patterson Pump Company,* B–204694,82–1 C.P.D. ¶ 279 (IFB requirement that bidder state whether he is now or ever has been engaged in work similar to that proposed, giving location, rating and year of work); *Action Service Corporation,* B–246413.2, 1992 WL 55045 (Comp. Gen.) (RFP requirement that contractor have experience in performing requirements of similar size and scope); *John Crowe & Associates,* B–227846, 87–2 C.P.D. ¶ 194 (RFP requirement that proposers submit information regarding the experience of all key personnel in handling similar projects). In each of these instances, GAO found that the speci-

fications did not set forth specific, objective standards measuring the offerors' ability to perform, but rather expressed, in general terms, factors which are encompassed by the contracting officer's subjective responsibility determination.

The first sentence of section 1.24 of the solicitation states: "... the apparent low bidder shall supply the Name, Point of Contact, Address and Telephone Numbers for at least five (5) Government Agencies and/or Private Owners from which it was contracted to perform the same or similar projects with respect to scope, size, and dollar value within the last three (3) years." In the court's opinion, the plain language of the first sentence sets forth a specific and objective standard limiting the class of bidders to those meeting the qualitative and quantitative qualifications specified (*i.e.*, submission of a listing of at least 5 contracts similar in scope, size and dollar amount to the present project, performed within the last three years).[3] The court finds unreasonable the views expressed by defendant and GAO that the first sentence of the provision only requires that the bidder submit information on whatever contracts it had, whether or not those contracts met the substantive requirements (size, scope, and dollar amount) of the first sentence. Such an interpretation does not follow from any reasonable reading of the wording of the provision and flies in the face of numerous GAO decisions illuminating the Comptroller General's definition of definitive responsibility criteria. *See M & M Welding & Fabricators, Inc.*, 96–2 C.P.D. ¶ 37; *D.H. Kim Enterprises*, 94–1 C.P.D. ¶ 86; *Roth Brothers*, 89–2 C.P.D. ¶ 100; *J.A. Jones Construction Company*, 85–2 C.P.D. ¶ 637; *Urban Masonry Corporation*, 84–1 C.P.D. ¶ 48.

The second sentence of the disputed provision ("The projects presented should be within ten percent of the bid price offered for the project.") does not present any additional requirement but simply offers guidance to prospective offerors regarding the dollar value component of the first sentence. Thus, while the first sentence requires, *inter alia*, that the offeror provide a listing of contracts with a similar dollar amount as bid on the present project, the second sentence merely adds on a preference (not a requirement) that the dollar amount be within ten percent of the dollar value bid on the present project.

The third and final sentence of the provision states: "This information will be used by the Government to assist in its determination of responsibility in accordance with Subpart 9.1 of the FAR." The government argues that this sentence makes it clear that the specification was not meant to impose any mandatory threshold requirements and that the provision merely sought general responsibility information (under FAR 9.104–1) such that the contracting officer could subsequently make his responsibility determination. Thus, the government asserts that because the third sentence states that the information will merely be used "to assist in its determination of responsibility," the contracting officer retained full discretion in making a responsibility determination and it must follow that no mandatory threshold requirements (*i.e.*, any definitive responsibility criteria) could co-exist in this context.

Plaintiff, on the other hand, argues that the inclusion of the third sentence does not negate the presence of definitive responsibility criteria set forth in the first sentence. Plaintiff points out that even if a bidder were to submit five completed projects of similar size, scope and dollar value, if the FBI contacted those references and they reported that the bidder performed poorly, was late,

---

**3.** The Government contends that under the disputed provision the offeror could include contracts in which work had not yet been completed. Although the wording of the provision could conceivably be read to encompass uncompleted projects, such an interpretation, would obviously have hampered the government's ability to fully evaluate an offeror's past performance record. As plaintiff correctly points out, such an interpretation would allow the inclusion of contracts awarded, for example, just days or weeks prior to the issuance of the solicitation, without adequate time to gauge performance. While the court believes the more reasonable interpretation of the provision limits the submission to completed contracts, the issue is not at all significant since the government concedes that the contracting officer considered none of the contracts listed by BCI (either completed or incomplete) to have been similar in dollar value to BCI's bid on the present project.

and had bad quality control, that bidder would not be found responsible. The contracting officer would retain the discretion to determine that, although the bidder may have met the threshold requirement(s), his past performance was deficient and he was not responsible. Thus, plaintiff argues, the mere fact that this information is meant to assist the contracting officer and is not an automatic qualifier, does not make the requirement any less of a definitive responsibility criterion since, ultimately, the contracting officer must utilize that information as well as other relevant information impacting upon a particular offeror's responsibility to make the final responsibility determination. The court finds plaintiff's interpretation of the third sentence both persuasive and reasonable and finds that the interpretation proposed by GAO and defendant is unreasonable given the entirety of the language of section 1.24 of the solicitation.

■ The guiding principles which control the interpretation of government contracts and solicitations are considered to be largely interchangeable. In part, this tradition may have developed because substantial portions of solicitations are often incorporated into final contracts. *Allied Technology Group, Inc. v. United States*, 39 Fed.Cl. 125, 138 (1997). "Contracts and solicitations are to be read as a whole, so as to give meaning to all provisions." *Meyers Companies, Inc. v. United States*, 41 Fed.Cl. 303, 310 (1998), *citing Allied Technology Group, supra; B.D. Click Co., Inc. v. United States*, 222 Ct.Cl. 290, 299, 614 F.2d 748, 753 (1980); *Hol–Gar Mfg. Corp. v. United States*, 169 Ct.Cl. 384, 395, 351 F.2d 972, 979 (1965).

■ Established court precedent and rules of construction require that contract provisions not be interpreted as conflicting unless there is no other possible reasonable construction of the language. *International Transducer Corp. v. United States*, 30 Fed. Cl. 522, 526 (1994) *citing Hol–Gar Mfg. at* 169 Ct.Cl. at 395, 351 F.2d at 979. Furthermore, the language of a contract (or solicitation) must be given the meaning that a "reasonably intelligent person acquainted with the contemporaneous circumstances" would reach. *Allied Technology Group*, 39 Fed.Cl.

at 138. Whenever possible, courts look to a plain language or plain meaning interpretation of contractual documents. *Aleman Food Servs., Inc. v. United States*, 994 F.2d 819, 822 (Fed.Cir.1993); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991). Given the plain language of section 1.24 of the solicitation and, construing the terms of that provision as a whole, the court finds that section 1.24 of the solicitation set forth definitive responsibility criteria as provided under FAR 9.104–2. Specifically, the definitive responsibility criteria required by section 1.24 of the solicitation included the submission of a listing which had to specify at least five contracts similar to the scope, size and dollar value of the present project, performed within the last three years.

■ It is well settled that the ordinary meaning of contract language governs *American Science & Eng'g, Inc. v. United States*, 229 Ct.Cl. 47, 57, 663 F.2d 82, 88 (1981), and a party's subjective, but unexpressed intent plays no role in interpreting a contract. *International Transducer Corp., at 526–27.* It is clear that it was not the FBI's intention to limit the potential pool of offerors through the imposition of definitive responsibility criteria, as evidenced by the government's strenuous arguments that the FBI neither desired nor required definitive responsibility criteria in section 1.24 of the solicitation, as well as by the FBI's actual determination that BCI (whose submissions did not include five contracts with a similar dollar value) was a responsible bidder. In the FBI's February 5, 1999 letter denying Tompkins' agency protest, the Chief Contracting Officer stated, "Clearly, the FBI did not consider the information defined in Section 1.24 as 'definitive responsibility criteria.'" AR at 6. During oral argument, government counsel represented that she had expressly asked the FBI to give her an example of an FBI contract setting out definitive responsibility criteria and was informed that the FBI did not have one because the FBI did not want to stifle competition. Transcript at 27. The government further stated that if the FBI had intended to include definitive responsibility criteria in the subject solicitation, or in any solicitation, the FBI's practice would have

been to first publish the definitive responsibility criteria in the *Commerce Business Daily*. Transcript 36–37. While it is absolutely clear that the FBI did not intend to include definitive responsibility criteria in the subject solicitation because it did not want to stifle competition, the FBI's intentions cannot alter the proper interpretation of the solicitation.

Although the court finds that the solicitation set forth definitive responsibility criteria, such a determination does not result in award of the contract to Tompkins. It is well established that a procuring agency must specify its needs and solicit offers in a manner designed to achieve full and open competition so that all responsible sources are permitted to compete. 41 U.S.C. § 253(a). The use of unduly restrictive specifications is prohibited by 41 U.S.C. § 253(a)(2) and 10 U.S.C. § 2305(a)(1)(B). Thus, a solicitation may include restrictive provisions only to the extent necessary to satisfy the needs of the agency or as otherwise authorized by law.

 Here, the FBI did not intend to include definitive responsibility criteria in this solicitation; viewed the inclusion of such as unnecessary to meet the agency's needs; and believed that these special standards would stifle competition. Likewise, Tompkins states, "... by including such requirements and not enforcing them, the FBI improperly limited competition by publishing such requirements which discouraged bidders who did not meet them from bidding." Complaint at 3. Thus, where an agency's specifications have been overstated and are deemed to be overly restrictive, a cancellation of the solicitation is appropriate. *See Vanguard Security, Inc. v. United States*, 20 Cl.Ct. 90, 109–110 (1990) *citing Aviation Enterprises, Inc. v. United States*, 8 Cl.Ct. 1, 19 (1985) (solicitation cancellation based upon overstated specifications was reasonable); *see also American Television Systems*, B–220087.3, 86–1 C.P.D. ¶ 562, at 2 ("[c]hanging the requirements of a procurement after bid opening to express properly the contracting agency's minimum needs generally constitutes a compelling reason for cancellation ...."); *Lesko Associates, Inc.*, B–209703, 83–1 C.P.D. ¶ 443, at 2 ("[W]here a solicitation

contains an unnecessary requirement, the criteria must be construed as being unduly restrictive of competition and that, ordinarily, in that circumstance the solicitation should be canceled before award."); *Haughton Elevator Division, Reliance Electric Company*, 76–1 C.P.D. ¶ 294 (Where IFB was misleading and unduly restrictive of competition to the prejudice of others by erroneously indicating that consideration would be limited to bidders having a minimum of 5 years' experience, a cogent and compelling reason existed for cancellation of the IFB).

 Since the record here reveals that the section 1.24 of the solicitation ("Past Performance Evaluation") has been overstated and is overly restrictive of competition to the prejudice of other potential offerors, this court finds that plaintiff is entitled to a declaration that the solicitation unduly restricts competition in violation of CICA. The specification lacks validity and a compelling reason exists to cancel the solicitation. Accordingly, the procurement is hereby cancelled.

## CONCLUSION

Since there are no genuine issues of material fact, further proceedings in this matter are unnecessary. For the reasons stated above, plaintiff's motion for judgment on the administrative record is granted insofar as it seeks a declaration that, based on the record before the court, section 1.24 of the solicitation ("Past Performance Evaluation") is invalid and not in compliance with CICA. Plaintiff's motion is otherwise denied. Defendant's motion is denied.

Accordingly, it is hereby **ORDERED** that:

(1) Final Judgment be entered declaring section 1.24 ("Past Performance Evaluation") of Solicitation No. 7189 null and void as overstating the agency's requirements, unduly restricting competition, and contrary to CICA requirements; and

(2) Except as **GRANTED** in (1), all other relief sought in this matter is **DENIED**. No costs.