**SPACE EXPLORATION TECHNOLOGIES CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Boeing Launch Services, Inc., and Lockheed Martin Corporation, Defendant–Intervenors.**

No. 05–1053C.

United States Court of Federal Claims.

Oct. 28, 2005.[1]

Richard J. Vacura, McLean, VA, for plaintiff. Holly Emrick Svetz and Michael E. Anderson, Morrison & Foerster, LLP, of counsel.

David B. Stinson, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. Michael J. O'Farrell, Jr. and Allen B. Coe, Department of the Air Force, of counsel.

Stuart B. Nibley, Washington, DC, for defendant-intervenor Lockheed Martin Corporation. Michael J. Askew, Thelen Reid & Priest, LLP; Thomas L. McGovern, III and Michael J. Mason, Hogan & Hartson, LLP, Washington, DC; and Scott W. MacKay, Vice President and General Counsel, Lockheed Martin Corporation, Bethesda, MD, of counsel.

Scott M. McCaleb, Washington, DC, for defendant-intervenor Boeing Launch Services, Inc. Paul F. Khoury, Daniel P. Graham, and Nicole J. Owren–Wiest, Wiley Rein & Fielding, LLP, of counsel.

## *OPINION*

CHRISTINE O.C. MILLER, Judge.

This case is before the court after argument on defendant and intervenors' motions to dismiss. Plaintiff, a promising entrant into the Government's missile launch program seeks to enjoin the award of a contract to two established players that have performed as sole-source awardees in the past and have combined to do so in the future. The solicitation contemplates "support," or crucial preparatory development for future launches. The protester fears that, if the procurement proceeds, it will be at a compet-

1. This opinion was issued under seal on October 26, 2005. The parties were given the opportunity to notify the court by November 9, 2005, whether the seal could be lifted and, if so, to identify protected/privileged material subject to deletion. The parties have requested that the opinion be issued for publication and have requested no deletions.

itive disadvantage when it is fully qualified to submit a proposal for future launches. Moreover, it charges that the subject procurement effectively has allocated future launches to the two sole-source contractors through fiscal year ("FY") 2011, thereby foreclosing any realistic opportunity to compete.

## FACTS

The undisputed facts that follow come from the parties' filings. No administrative record has been submitted.[2] In 1995 the United States Air Force (the "Air Force") implemented its Evolved Expendable Launch Vehicle ("EELV") Program. Developed to achieve affordable, assured access to space, the EELV Program relies on two families of launch vehicles to launch the Government's national security satellites into their designated orbits.

Boeing Launch Services, Inc. ("Boeing"), and Lockheed Martin Corporation ("Lockheed"), which were awarded pre-engineering and manufacturing contracts as part of the EELV Program, manufacture the Delta IV and the Atlas V, respectively. The selection of the Delta IV and the Atlas V concluded a competitive procurement process that began in 1995 and took over three years, during which time Boeing and Lockheed were extensively scrutinized to determine whether they could meet the EELV Program requirements.[3] "The awarded contracts required the contractors to complete engineering and manufacturing development of the launch vehicle system, launch pads, satellite interfaces, and support infrastructure, as well as to demonstrate that the system met all Government requirements." Pl.'s Mem. filed Sep. 30, 2005, at 5.

Although the initial acquisition strategy called for a down-select to one contractor for final development and production, both Boeing and Lockheed were retained in order to maintain competition throughout the life of the program and prevent reliance on any one contractor. A June 9, 1998 Justification and Approval document ("J & A") authorized the limited competition.

The competition between the two contractors was intense throughout the first and second installments of rocket launches to be awarded, known as "Buy 1" and "Buy 2." This lawsuit arises out of the conditions surrounding "Buy 3."

On March 22, 2005, the Air Force published a Pre–Solicitation Notice for Buy 3, announcing its intention to solicit Requests for Proposal ("RFPs") to Boeing and Lockheed for contracts in support of the EELV Program. The Notice, which was published in Federal Business Opportunities ("FedBizOpps"), the Government-wide publication that communicates its requirements to potential suppliers, announced that the Air Force intended to award the contracts to Boeing and Lockheed. However, "[a]ny other interested parties" that "believe[d] they [could] compete as prime contractors in the EELV effort [were] encouraged to submit a statement of capability and qualification ... within seven (7) calendar days ...." Plaintiff, a Delaware corporation, engaged in the business of designing, developing, manufacturing and launching EELVs for commercial and government application, did not submit any statement of capability or interest to the Air Force. Plaintiff subsequently acknowledged that it "did not intend to compete for the initial launch awards given the apparent two to three year period of performance ...." SpaceX Response to Motion to Dismiss Protests of Space Exploration Tech. Corp. B–

---

2. Plaintiff complains that decision is premature absent an administrative record. However, plaintiff does not indicate what facts are not on the record before the court that would change or affect its status as a party that has neither submitted a proposal nor qualifies to submit a proposal. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988) (holding that plaintiff must establish jurisdiction by preponderance of evidence).

3. According to the Declaration of Col. John L. Insprucker, III, Director of the Evolved Expendable Launch Vehicle Program at the Air Force Space and Missile Systems Center at Los Angeles Air Force Base in El Segundo, California, "In addition to the successful completion of rigorous system design and requirements reviews, [Boeing and Lockheed] ... [met] approximately 73 specific requirements contained in a Standard Interface Specification (SIS)." Decl. of Col. John L. Insprucker, III, Sept. 22, 2005, ¶ 8.

297046, B–297047, Under Solicitation Nos. FA8816–05–R–0004 and FA8816–05–R–0005, Sept. 6, 2005, at 10, filed with the Government Accountability Office (the "GAO").

The Air Force, on April 21, 2005, issued to Boeing and Lockheed RFPs for the EELV Buy 3 ELS contracts, encompassing only the Air Force's FY06 requirements. The cover memorandum to the RFPs reserved the Government's "right to award, reallocate, and/or reschedule these un-awarded launch service missions, or to not make any launch service awards," Mem. for: Evolved Expendable Launch Vehicle (EELV) Contractors, Apr. 21, 2005, at 2, and included a notional chart containing projections of various EELV launches for FY04 through 2011.

On June 17, 2005, plaintiff submitted an agency-level protest with regard to the Air Force's decision "to award multi-year-like contracts for launch services related to the ... EELV ... without competition ...." Pre–Award Protest of Space Exploration Tech. Corp.; Under Solicitation Nos. FA8816–05–R–0004 and FA8816–05–R–0005, June 17, 2005, at 1 (emphasis omitted). Plaintiff asserted that (1) the Air Force improperly structured its solicitations to limit competition to Boeing and Lockheed Martin and (2) the Air Force's J & A was not supported by reasonable justification. The Air Force denied this claim by decision dated August 5, 2005, insisting that plaintiff had misconstrued the solicitation and that the Government's J & A was not defective. In the same document, the Air Force clarified that the RFPs would result in awards for FY06 missions only; FY07 and beyond missions were not being awarded. Evolved Expendable Launch Vehicle (EELV) Program—Pre–Award Protest by Space Exploration Tech. Corp. (SpaceX); Under Solicitation Nos. FA8816–05–R–0004 and FA8816–05–R–0005, Aug. 5, 2005, at ¶ 2(a).

Following the Air Force's denial of the agency-level protest, plaintiff on August 15, 2005, submitted its protest to the GAO. The protest was based on two grounds:

First, Air Force's current structure of the RFPs violates full and open competition requirements. [The Competition in Contracting Act, 31 U.S.C. § 3551(2) (2000) (the "CICA")] generally requires that solicitations permit full and open competition and contain restrictive provisions and conditions only to the extent necessary to satisfy the needs of the agency ... Second, the required justification and approval ("J & A") is not supported by reasonable justification for awarding sole source contracts to Boeing and Lockheed Martin that extend the performance period indefinitely.

Protest of Space Exploration Tech. Corp. Under Solicitation Nos. FA8816–05–R–0004 and FA8816–05–R–0005, Aug. 15, 2005, at 2–3 (emphasis omitted).

In response the Air Force revised the RFPs to clarify further that the FY06 launch requirements were awarded to Boeing and Lockheed Martin for launches anticipated to take place in FY08 and that additional missions would be awarded on an annual basis and synopsized in FedBizOpps. Following this clarification, the GAO requested that plaintiff show cause as to why its protest should not be dismissed as moot. Plaintiff failed to respond and, instead, initiated this court challenge.[4] On October 4, 2005, the GAO dismissed plaintiff's protest.

## DISCUSSION

The United States Court of Appeals for the Federal Circuit has described injunctive relief as "extraordinary relief." *FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed.Cir. 1993); *see CACI, Inc.-Fed. v. United States,* 719 F.2d 1567, 1581 (Fed.Cir.1983). In order to obtain an injunction, plaintiff must demonstrate by a preponderance of the evidence that (1) it has a likelihood of success on the merits; (2) it will suffer irreparable harm if injunctive relief is not granted; (3) the harm to plaintiff if an injunction is not granted outweighs the harm to the Government if an injunction is granted; and (4) the injunction is not against the public interest. *FMC Corp.,* 3 F.3d at 427.

4. While Buy 3 is being conducted under two sets of solicitations—the Launch Capabilities Solicitations and the Launch Services Solicitations—only the latter is the subject of this action.

**4**

### I. *Motion to dismiss based on lack of standing*

As in every federal action, standing is a threshold jurisdictional requirement when seeking an injunction. *Sicom Sys., Ltd. v. Agilent Tech.*, 427 F.3d 971, 975 (Fed.Cir. 2005); *Myers Investigative & Sec. Serv., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir.2002). The party invoking federal jurisdiction bears the burden of proving that standing was present at the time the suit was brought. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Sicom Sys.*, 427 F.3d at 975–76; *Myers Investigative & Sec. Serv.*, 275 F.3d at 1369. "At the pleading stage, general factual allegations may suffice to meet this burden, for on a motion to dismiss the court 'presumes that general allegations embrace those specific facts that are necessary to support the claim.'" *Alaska Cent. Express v. United States*, 50 Fed.Cl. 510, 513 (2001) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

Under the Administrative Disputes Resolution Act of 1996 (the "ADRA"), an amendment to the Tucker Act, 28 U.S.C. §§ 1491–1509 (2000), the United States Court of Federal Claims has jurisdiction to entertain actions by "interested part[ies] objecting to a solicitation by a Federal Agency for bids of proposals for a proposed contract or to a proposed award or the award of a contract . . . ." *Id.* § 1491(b)(1). While the ADRA itself does not define the term "interested party," the United States Court of Appeals for the Federal Circuit has determined that Congress intended to adopt the definition provided in the "CICA", *Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed.Cir.2001).

According to the CICA, "[t]he term 'interested party', with respect to a contract or a solicitation or other request for offers described in paragraph (1), means an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2)(A) (2000); *Myers Investigative & Sec. Serv.*, 275 F.3d at 1370 (holding that standing in the context of sole-source procurement "is limited to actual or prospective bidders or offerors" (internal quotations omitted)); *Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed.Cir.2001) (holding that "Congress intended standing under the statute to be limited to disappointed bidders"); *see also Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed.Cir.2003) (explaining plaintiff must show that it is an " 'actual or prospective bidder[ ] or offeror[ ] whose direct economic interest would be affected by the award of the contract or by failure to award the contract,' *i.e.*, that [it is] an interested party, prejudiced by the award . . . ." (quoting *Am. Fed'n of Gov't Employees*, 258 F.3d at 1302 (first and second alteration in original))).

#### 1. *Actual or prospective bidder*

Defendant and intervenors make two arguments as to why plaintiff is not an interested party. First, they argue that plaintiff does not meet the threshold requirement for an interested party because it is not an actual or prospective bidder. *See Myers Investigative & Sec. Serv.*, 275 F.3d at 1370 (holding that standing "is limited to actual or prospective bidders or offerors" (internal quotation omitted)).

Plaintiff, for its part, counters that the court should differentiate its analysis between pre– and post-award protests. Plaintiff maintains that it need not have been an actual or prospective bidder; rather, a pre-award analysis requires plaintiff to show only that it has a connection to and economic interest in the procurement in order to establish itself as an "interested party." Moreover, plaintiff argues that the facts support a finding that it is a pre-award interested party. It maintains that "[t]he current structure of the RFPs, as amended by the Air Force in response to SpaceX's protest at the GAO . . . still unnecessarily bundles technical requirements and allocates all EELV missions through 2011 to Boeing and Lockheed Martin . . . ." Compl. filed Sept. 30, 2005 ¶ 3. Because plaintiff anticipates having full EELV launch capability by 2007, plaintiff claims a connection to and interest in the procurement.

Unfortunately for plaintiff, neither the facts nor controlling case law can sustain its position. The Federal Circuit, in *MCI Tele. Corp. v. United States*, 878 F.2d 362 (Fed. Cir.1989), held that "the opportunity to qualify either as an actual or a prospective bidder ends when the proposal period ends . . . ." *Id.* at 365. The Federal Circuit does not distinguish between pre-award and post-award protests. Under the standards by which this court is bound, plaintiff cannot be deemed an interested party. Plaintiff failed to file an action with the court until after the date for submission of proposals had passed, a fact that plaintiff itself acknowledges. *See* Pl.'s Br. filed Oct. 14, 2005, at 20. Most significantly, plaintiff admits that it will not have full EELV launch capability prior to FY07. Pl.'s Br. filed Oct. 14, 2005, at 9 (SpaceX is "a potential competitor for launch services beginning in FY07."); Compl. ¶ 7 ("If the J & A were structured properly, it would recognize SpaceX as a potential competitive bidder in 2007 . . . ."). As plaintiff is not an actual or prospective bidder on the outstanding solicitation, it cannot compete for FY06 launches.

Plaintiff contends that the current RFPs, while not awarding launches beyond FY06, still improperly allocate launches through FY11 and beyond to Boeing or Lockheed on a sole-source basis. According to plaintiff, "Even if other parties are ostensibly permitted to compete in 2007 and beyond, if each payload customer has already performed design, analysis and integration work based upon the existing designs of the allocated contractor, Boeing or Lockheed, the sole source contractors will possess a significant competitive advantage over other competitors." Pl.'s Br. filed Oct. 14, 2005, at 11.[5]

The Air Force's contracting officer amended the RFPs in order to clarify that they only covered FY06 launch operations. Protest of Space Exploration Tech. Corp. (SpaceX): B–297046/B–297047 Request for Dismissal, Sept. 23, 2005, at 1. The Air Force will issue separate solicitations for future years and will notify potential bidders of its intent through issuance of the required pre-solicitation notices. *Id.* at 1; *see Alaska Central*, 50 Fed.Cl. at 515 (addressing necessity of actual solicitation in order to find violation). Even plaintiff, in its complaint, acknowledged that it "will be permitted to offer capability statements to demonstrate its ability to compete beginning in 2007." Compl. ¶ 38.[6] Any attempt to characterize the current RFPs as encompassing more than FY06 is, as counsel for Lockheed argued, plaintiff's "[attempt] to manufacture standing with regard to the current procurements that relate only to fiscal year 2006 requirements." Transcript of Proceedings, *Space Exploration Technologies Corp. v. United States*, No. 05–1053C, at 44 (Oct. 21, 2005) ("Tr.").

The mere fact that plaintiff may be at a competitive disadvantage as compared to incumbents Boeing and Lockheed is an insufficient basis for finding that plaintiff is an actual or potential bidder. *See Myers Investigative & Sec. Serv.*, 275 F.3d at 1370 ("When a party contends that the procurement procedure in a sole-source case involved a violation of a statute, regulation, or procedure, it must . . . show[ ] that it would

---

5. Plaintiff urges that under properly structured RFPs, the Air Force would allow bidders to submit offers by launch. According to the Air Force, the amended RFPs reflect such to be its policy. The Air Force insists that no final allocation of launch operations for FY07 or later has been made and that plaintiff will be accorded every opportunity to compete for future contracts. See *Transcript of Proceedings, Space Exploration Technologies Corp. v. United States*, No. 05–1053C, at 37 (Oct. 21, 2005) ("Tr.") ("To the extent that they're monies [that] might be spent by various parties regarding future launches, the Government will not hold that against offerors who demonstrate a capability of doing this type of launch work.").

6. Boeing captures the structure of plaintiff's argument:

> [SpaceX] impermissibly presumes that, contrary to numerous Air Force representations, the Air Force will not act in good faith and evaluate properly any response that SpaceX might make (if it believes it has an EELV-class vehicle) to a future Pre-Solicitation Notice; instead, Space X assumes that any future procurement process will be a ruse in which the Air Force "goes through the motions" having already predetermined the awardee through a "draft" allocation used for budgeting and planning[.]

Boeing's Br., filed Oct. 19, 2005, at 2.

have had a substantial chance of receiving the award.") However, defendant is adamant that the expenditure of funds on EELV launch-capable companies will not be held against new competitors; *see* 10 U.S.C. § 2273 (2000) ("It is the policy of the United States for the President to ... provid[e] resources and policy guidance to sustain ... the availability of at least two space launch vehicles (or families of space launch vehicles) ....."); *see also Emery Worldwide Airlines Inc. v. United States,* 49 Fed.Cl. 211, 234 (2001), *aff'd,* 264 F.3d 1071 (Fed.Cir.2001) ("When deciding whether to award a contract to a potential sole-source supplier, procurement officials are not required to speculate as to every possible scenario that might enable the industry players to qualify.") The ADRA has limited the availability of judicial review to a class of contractor—the actual or prospective bidder.

Plaintiff is not an actual or prospective bidder and cannot qualify as an interested party with standing under the ADRA. In the interest of giving full consideration to the issue of standing, however, the court examines the issue of direct economic interest.

### 2. *Direct economic interest*

Defendant and intervenors also argue that plaintiff is not an "interested party" because it does not have an economic interest that would be impacted by the award of the contract or by failure to award the contract. Standing, pursuant to the ADRA, is limited to parties "whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Myers Investigative & Sec. Serv.,* 275 F.3d at 1370.

The Federal Circuit has ruled that while a plaintiff "need not show that it would have received the award in competition with other hypothetical bidders, it must show that it would have been a qualified bidder." *Id.* at 1370. In other words, to show that it has a direct economic interest, "the plaintiff need only establish that it 'could compete for the contract' if the bid process were made competitive.'" *Id.* at 1371 (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1334 (Fed.Cir.

2001)). Thus, a protestor must also show evidence of prejudice—that a significant error in the procurement process occurred and absent the error, the protestor would have been a qualified bidder. *See Info. Tech. & Applications Corp. v. United States,* 316 F.3d 1312, 1319 (Fed.Cir.2003) (holding that "the question of prejudice goes directly to the question of standing"); *Myers Investigative & Sec. Serv.,* 275 F.3d at 1370 (stating prejudice "is a necessary element of standing"); *Emery Worldwide Airlines Inc. v. United States,* 264 F.3d 1071, 1086 (Fed.Cir.2001) (requiring plaintiff to show that "proceeding without the violation would have made the procurement official's decision to make a sole-source award rather than to conduct a competitive bidding process irrational ..."); *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1368 (Fed.Cir.1999) ("A protestor demonstrates prejudice by showing 'that there was a substantial chance it would have received the contract award' if the government had not violated the law.") (citation omitted); *Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1582 (Fed.Cir.1996) ("Thus, for [plaintiff] to prevail it must establish not only some significant error in the procurement process, but also that there was a substantial chance it would have received the contract award but for that error.").

During argument plaintiff's counsel urged that the Federal Circuit, in determining that a plaintiff need only show that it could compete in a properly structured bid process, created a "realistic bidder" standard. Tr. at 47. However, semantics cannot change plaintiff's actual relationship to the RFPs at issue. Under either the "qualified bidder" standard or plaintiff's proffered "realistic bidder" standard, plaintiff fails.

Plaintiff's accession in the EELV market has been impressive. A relatively new entrant, plaintiff has obtained contracts with several government agencies for launch services, including the launch of an EELV-class vehicle in 2007. Such accomplishments aside, however, plaintiff fully concedes that it will not have full EELV launch capability prior to FY07. It has not, cannot, and does not intend to bid on FY06 RFPs. Because the current RFPs encompass only FY06, plaintiff

is neither a realistic nor a qualified bidder. *See Emery Worldwide Airlines,* 49 Fed.Cl. at 234 ("Whatever potential ability plaintiff had to perform the contract is presented with the benefit of hindsight and falls well short of discharging the burden required to set aside a procurement decision."). Plaintiff has no chance of receiving a contract award for FY06 missions regardless of any procurement violation that it might prove.

As plaintiff did not establish that it was an "interested party" under § 1491(b)(1), it does not have standing to bring this bid protest. "[S]tanding is jurisdictional, [and] lack of standing precludes a ruling on the merits." *Media Techs. Licensing, LLC v. Upper Deck Co.,* 334 F.3d 1366, 1369–70 (Fed.Cir.2003); *see also Information Tech. & Apps. Corp. v. United States,* 316 F.3d 1312, 1319 (Fed.Cir. 2003) ("[B]ecause the question of prejudice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits.").

II. *Motion to dismiss for failure to state claim*

Boeing moved under RCFC 12(b)(6) for a dismissal of plaintiff's claims.[7] Dismissal under Rule 12(b)(6) "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed.Cir.2002). When making its determination, the court accepts as true the plaintiff's well-pleaded factual allegations and draws all reasonable factual inferences in its favor. *Xechem Int'l, Inc. v. Univ. of Tex. M.D. Anderson Cancer Ctr.,* 382 F.3d 1324, 1326 (Fed.Cir.2004). Thus, "if relief could be granted 'under any set of facts that could be proved consistent with the allegations[,]' " the court must deny a RCFC 12(b)(6) motion. *Nat'l Org. for Women, Inc. v. Scheidler,* 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

Count I of plaintiff's Complaint alleges that "[t]he decision to award the launch services contracts to Boeing and Lockheed Martin ... and the threat of the Air Force to override the mandatory statutory stay of performance during the pendency of SpaceX's protest at the GAO was arbitrary, capricious, and an abuse of discretion." Compl. ¶ 30. While plaintiff is correct that the CICA requires a contracting officer to withhold award of a contract while there is a protest before the GAO, any such stay remains in effect only "while the protest is pending." 31 U.S.C. § 3553(c)(1) (2000). Because the GAO is required to dismiss any case in which the matter before it is the subject of litigation in a court of competent jurisdiction, 4 C.F.R. (FAR) § 21.11 (2000), the stay cannot remain in effect. Indeed, the GAO dismissed the protest on October 4, 2005. Absent court order to the contrary, the Air Force is free to award contracts.

Count II of plaintiff's Complaint alleges that the Air Force's "allocation of all 23 of the Buy 3 EELV mission launches ... to Boeing and Lockheed Martin violates the full and open competition requirements of [the] CICA, 10 U.S.C. § 1023 *et. seq.*" Compl. ¶ 35. This statutory provision, 10 U.S.C. § 1023, does not exist. Elsewhere in the complaint, ¶¶ 2, 21, plaintiff relies on 10 U.S.C. § 1032 (2000) as the basis for Count II; 10 U.S.C. § 1032 addresses disability and death compensation for dependents of members of the armed forces held as captives. Plaintiff fails to identify any provision of the CICA that the Air Force has violated.[8]

---

7. While Boeing moves to dismiss for failure to state a claim under RCFC 12(b)(4), RCFC 12(b)(6) is the correct rule for such a motion.

8. In its reply to Boeing's motion, plaintiff again fails to cite a statutory provision. Moreover, it abandons the cases upon which it previously relied. In addressing these failings, Boeing convincingly proffered:

> SpaceX previously had relied on *Vanguard Security, Inc. v. United States,* 20 Cl.Ct. 90 (1990), *Aviation Enterprises, Inc. v. United States,* 8 Cl.Ct. 1 (1985), and *Charles H. Tomp-kins Co. v. United States,* 43 Fed.Cl. 716 (1999).... None of these irrelevant cases is even cited in SpaceX's Opposition. Instead[,] it relies on *Naplesyacht.com, Inc. v. United States,* 60 Fed.Cl. 459 (2004) .... the language upon which SpaceX relies relates to the Court's finding that the plaintiff, which was an actual offeror in response to an outstanding solicitation, was an interested party. SpaceX also inexplicably relies on *CW Gov't Travel, Inc. v. United States,* 61 Fed.Cl. 559 (2004), which held that the Government violated CICA in an out-of-scope modification case by failing

Count III of plaintiff's Complaint alleges that "[i]f the J & A were structured properly, it would recognize SpaceX as a competitive bidder in 2007 and would not allocate all launches to Boeing and Lockheed Martin." Compl. ¶ 44. The J & A, however, is accurately characterized by Boeing:

> [T]he J & A allocates nothing. Therefore, it does not matter how the J & A is "structured." The J & A is the agency's record to support and approve contracting actions based on other than full and open competition as authorized by CICA and its implementing regulations. 10 U.S.C. § 2304(f)(1) .... [Moreover], to the extent that the J & A justifies any contracting action, the only existing action to which it relates are the FY06 missions being awarded at this time. This was confirmed by the Air Force's corrective action.

Boeing's Br. filed Oct. 11, 2005, at 24 (emphasis omitted). Moreover, the Air Force's draft allocations do not implicate the statutory requirement for a J & A because a J & A is required only for an impending contract award. *See* 10 U.S.C. § 2304(f)(1) (2000). As the foregoing discussion expounds, none of plaintiff's three claims states a claim upon which relief can be granted. If jurisdiction were present, the court would grant Boeing's motion to dismiss.

### III. *Remaining findings required on motion for injunctive relief*

In order to obtain an injunction, plaintiff is required to show: 1) that it has a likelihood of success on the merits; 2) that it would suffer irreparable injury if injunctive relief were not granted; 3) that the balance of the hardships tipped in the movant's favor; and 4) that an injunction would not be contrary to the public interest. *See FMC Corp.*, 3 F.3d at 427; *see also U.S. Ass'n of Importers of Textiles & Apparel v. United States*, 413 F.3d 1344, 1346 (Fed.Cir.2005). Plaintiff cannot overcome a jurisdictional defect in standing. Nor can plaintiff succeed on the merits.

Plaintiff's motion for an injunction also fails the second factor as it is not a contender

to issue a solicitation for that need. Here, by contrast, the Air Force has committed to issue a solicitation each year for its then-current needs.

for award. While "[n]o one factor, taken individually, is necessarily dispositive[,]" *FMC Corp.*, 3 F.3d at 427, "the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial," *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 953 (Fed.Cir.1990). Plaintiff cannot satisfy two of the four factors, and plaintiff's jurisdictional infirmity bars the court from considering the third and fourth. Therefore, plaintiff's request for an injunction is denied.

### CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Defendant and intervenors' motions to dismiss are granted.

2. The Clerk of the Court shall dismiss the complaint without prejudice for lack of subject matter jurisdiction.

3. By November 9, 2005, the parties shall notify the court if this opinion should be submitted for publication. If so, they shall identify by brackets any material subject to redaction before this opinion issues for publication.

Boeing's Br. filed Oct. 19, 2005, at 15 n. 9.